## THE STATE OF KANSAS v. A. D. CULLINS.

INTOXICATING LIQUOR — *Illegal Sale* — *Principal Offender.* The purchaser of intoxicating liquor, which is sold in violation of law, is not a participant with the seller, and therefore is not guilty as the principal offender.

*Appeal from Marion District Court.*

ON the 12th day of July, 1892, an information was filed in the district court of Marion county against *A. D. Cullins*, charging him with selling intoxicating liquor without first taking out and having a permit as required by law. The information contained five counts. Upon the trial, William Dannenfelser testified as follows:

"Ques. How much [whisky] did you get? Ans. Well, I got a fourth of a pint; four of us got a pint.

"Q. Who were the four of you? A. Why, there was me, and, I think, George Ray, and Ed. Winters was one, and I think he was the other.

"Q. Who was the other? A. Cullins.

"Q. Did you pay anything for it? A. I paid 25 cents for my share, and I think the others paid theirs.

"Q. To whom did you pay it? A. Cullins.

"Q. What did you call for? A. We did n't call for anything in particular; Cullins spoke up and said, 'Let's get a pint of whisky,' and we chipped in and got a pint of whisky.

"Q. To whom was that money given? A. Cullins.

"Q. You say that Cullins went and got this whisky? A. Yes, sir.

"Q. How long was he gone? A. Well, I suppose something like five minutes.

"Q. Did you inquire where he went? A. No, sir."

The defendant, A. D. Cullins, testified as follows:

"Q. You heard Mr. Dannenfelser's testimony, did n't you? A. Yes, sir.

"Q. You did go and get some whisky for him and yourself and some other fellows, did n't you? A. Just as much for myself as for them.

"Q. Well, did you get that at one of the joints, too? A. I got it in a joint, sir.

"Q. Did n't get it at a drug store?   A. No, sir.

"Q. You can tell what joint you got it at?   A. I went to Wolf's, on the John Hess corner.

"Q. Is that on the east side of Main street, right next to the depot?   A. Yes, sir."

The court instructed the jury, among other things, as follows:

"If you believe, from the evidence in the case, beyond a reasonable doubt, that the defendant, A. D. Cullins, under either of the counts in this case, did himself sell intoxicating liquor, within two years prior to the filing of the information in this case, without having a permit so to do within the county of Marion, state of Kansas, or if you believe from the evidence in the case, beyond a reasonable doubt, that the defendant, A. D. Cullins, did aid or abet in the unlawful sale of intoxicating liquors, that is, by going into a place where intoxicating liquors are sold unlawfully, places spoken of by the witnesses by the name of 'joints,' and known to the defendant as a place where intoxicating liquors are unlawfully sold, and then and there buy intoxicating liquors with money furnished to him by parties for that purpose, he would be guilty of aiding and abetting in the unlawful sale, and he could be convicted the same as the principal offender."

The jury returned a verdict finding the defendant guilty as charged in the second count.   The motion for a new trial was overruled and exceptions taken.   The defendant, upon the verdict, was sentenced to pay a fine of $100, and costs taxed at $99.25, and to be imprisoned in the jail of Marion county for a period of 30 days.   He appeals.

*Keller & Dean*, for appellant:

We think our argument will be briefer than our statement of the case, because the bare statement shows, without any argument whatever, that the verdict was contrary to law, was not sustained by any evidence whatever, and that the instructions quoted contained the most egregious misrepresentation and misconception of the law governing the case it is possible to conceive.

The instructions were erroneous and misleading in the first

place, because there was no evidence to which they could have been applicable or pertinent. There was no evidence whatever that defendant was in any way criminally aiding and abetting in the sale of the whisky. In the second place, the instructions as to what constitutes aiding and abetting the crime of unlawfully selling intoxicating liquor, if the law, make everyone who buys a drink of intoxicating liquor from a person not legally authorized to sell the same a *particeps criminis* with the seller. There is not a single substantial foundation plank for the judgment of the court below to rest upon.

*John T. Little,* attorney general, and *C. M. Clark,* for The State:

The court below has stated the law as applied to this class of offenders. It might justly have gone so far as to instruct the jury that whoever purchases liquor at a place where the same is unlawfully sold is guilty of aiding, assisting and abetting in such unlawful sale, and may be convicted as for making the sale. Logically, there is no escape from this conclusion. The vendee solicits the sale, accepts the liquor, and pays for it; except for these contemporaneous acts, no offense could be committed. He is such a voluntary party to the crime that without him there can be no offense consummated. Nor is this view without precedent. See *The State v. Bonner,* 2 Head, 136, *et seq.* See, also, *The State v. Rand,* 51 N. H. 366.

We are aware that other courts have held differently, but the circumstances of their cases were different. For the most part, such decisions have been made under local option or license laws, where there was within the state lawful selling of intoxicating liquor as a beverage. In Kansas there can be no lawful sale for such purposes. The constitution and statutes are notice to such purchaser that he is participating in the commission of an offense.

A reasonable interpretation of the statute shows that the legislature had in mind such cases, and provided that, although the seller was guilty, a fear of prosecution should not pre-

vent him from informing on the seller. Gen. Stat. of 1889, ¶¶ 2540, 5180.

It appears from the defendant's testimony that he took an order for whisky, went to a "joint," got it filled, and delivered it. If this constitutes an offense charged in the information, it is immaterial whether the instruction complained of is erroneous. Gen. Stat. of 1889, ¶ 2550; *The State v. Nusbaum*, 52 Kas. 52.

The opinion of the court was delivered by

Horton, C. J.: The question in this case is, whether the purchaser of liquor which is sold in violation of law is guilty of unlawfully selling the same; that is, whether, by purchasing, he counsels, aids or abets in the unlawful sale, and may be convicted in the same manner as if he were the principal. The precedents are against the conviction of the purchaser, although he knows that the circumstances will render the sale of the liquor illegal. (1 Bish. Cr. Law, § 657; Black, Intox. Liq., § 381, and the cases cited; *The State v. Rand*, 51 N. H. 361; *Commonwealth v. Willard*, 22 Pick. 476.) In the last case, Chief Justice Shaw observed:

"We know of no case where an act which, previously to the statute, was lawful or indifferent, is prohibited under a small specific penalty, and where the soliciting or inducing another to do the act by which he may incur the penalty, is held to be itself punishable. Such a case perhaps may arise, under peculiar circumstances, in which the principle of law, which in itself is a highly salutary one, will apply; but the court are all of opinion that it does not apply to the case of one who, by purchasing spirituous liquor of an unlicensed person, does, as far as that act extends, induce that other to sell in violation of the statute."

In that case, a distinction is drawn between cases which are usually considered *mala in se*, or criminal in themselves, in contradistinction to *mala prohibita*, or acts otherwise indifferent, than as they are restrained by positive law.

*The State v. Bonner*, 2 Head, 136, is cited in support of the instruction of the court. In that case, it was held to be

an offense for a white man to purchase liquor from a slave without a written permit from his master; but that case has been distinguished in *Harney v. The State*, 8 Lea (Tenn.), 113, where it is held that a person who buys liquor sold contrary to the provisions of the statute is not equally as guilty as the seller. It is insisted, however, that as the sale of intoxicating liquors is forbidden in this state by the constitution, excepting for medical, scientific and mechanical purposes, the purchaser is a participant with the seller in the offense.

Notwithstanding the amendment to the constitution prohibiting the manufacture and sale of intoxicating liquors, the offense of selling intoxicating liquors in violation of the constitution and the statute is an offense of the class considered *mala prohibita*, and is not of the class *mala in se*. In Iowa, which has adopted a statute similar to our own, prohibiting the sale of intoxicating liquors, it was recently said by the supreme court of that state:

"As the prohibitory statute does not provide that the purchaser is guilty of any crime, it seems to us this fact practically ends the inquiry. If such had been the intent, it would certainly have been so provided in express terms. So far from this being so, the implication is clearly the other way. The prohibitory statute does not regard the purchaser an aider and abetter in any criminal act." (*Wakeman v. Chambers*, 69 Iowa, 169.)

It is further insisted, as the statute expressly provides that the person to whom intoxicating liquors are unlawfully sold shall be a competent witness, and that no person shall be excused from testifying touching any offense committed against the statute tending to criminate himself, but that such testimony shall in no case be used against him, that these provisions tend to sustain the argument that a purchaser is equally guilty with the seller. We think otherwise. The first provision adopts the ruling of the courts, that the purchaser of intoxicating liquors cannot excuse himself from testifying on the ground that his testimony would tend to criminate himself. The other provision relates to members or shareholders

of clubs or associations where intoxicating liquors are kept for the purpose of use or sale as a beverage, making every person directly or indirectly keeping or maintaining such a club or association alike guilty. (Laws of 1881, ch. 128, §§ 16–21; Gen. Stat. of 1889, ¶¶ 2536–2540.)

Finally, it is insisted that the defendant, upon his own testimony, is guilty of taking or receiving an order for intoxicating liquors, under § 12, chapter 149, Laws of 1885. (Gen. Stat. of 1889, ¶ 2550.) The testimony does not show that the defendant took or received any order for intoxicating liquor, within the provisions of the statute. At most, according to his testimony, he was a purchaser of liquor for himself, and acted as the agent or intermediary of his associates or the other buyers. If the defendant had sold the liquor himself, or if he had acted as agent or clerk for the seller, upon proper instructions to the jury, he could have been convicted. If this court should determine that, in prosecutions against parties for the unlawful sale of intoxicating liquors, the purchaser is equally guilty with the seller, the statute would be much more difficult of enforcement. Most of the convictions in prosecutions of this kind are sustained by the testimony of purchasers, and if purchasers and sellers are equally guilty, prosecutions will be less successful than heretofore, even if the testimony of the purchasers cannot be used against them. The judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.