City of Iola v. Lederer.

THE CITY OF IOLA, *Appellee*, V. TED LEDERER,
*Appellant.*

No. 17,820.

SYLLABUS BY THE COURT.

INTOXICATING LIQUORS—*Sale.—Statute Construed.* The transac-
. tion shown by the agreed statement of facts considered, and
*held,* that the court erred in finding the defendant guilty of
a sale of intoxicating liquors.

Appeal from Allen district court. Opinion filed Jan-
uary 6, 1912. Reversed.

STATEMENT.

The appellant was convicted of a sale of intoxicating
liquor in violation of an ordinance of the city of Iola. .
The district court sentenced him to thirty days' im-
prisonment in the county jail and a fine of one hun-
dred dollars and costs. From this judgment he appeals.

The case was tried to the court, and submitted upon
the following agreed statement of facts:

"(1) This is an action brought by the City of Iola
against the defendant charging defendant with having
on or about the 2nd day of July, 1911, made an unlaw-
ful sale of intoxicating liquor, to-wit: Beer, and in the
second count with having aided and abetted in the
keeping of a place where persons resorted for the pur-
pose of drinking intoxicating liquors, and afterwards
a trial was had in the Police Court of said city and said
defendant was found guilty on both counts as charged
and was assessed with a fine of One Hundred ($100.00)
Dollars and costs on each count together with a jail
sentence of thirty days on each count, and that from
said judgment and sentence of the Police Court the de-
fendant appealed.

"(2) That on or about the 2nd day of July, 1911,
this defendant and three other men were sitting in the
public park in the City of Iola, Allen County, Kansas,
and one of them, it is not now known who, suggested
that they 'chip in' or each contribute a sum of money
toward the purchase of a case of beer; during this con-

versation a fifth man joined the four and the proposition was stated to him by some one of the four gentlemen; thereupon the fifth man said: 'I want in but I have no money in my pocket,' and speaking further, addressing the defendant, said: 'You owe me money and you put in my part'; whereupon it was determined that a case of beer delivered would cost Three and 50-100 ($3.50) Dollars and that it would cost each of the five men seventy (70c) cents; thereupon the money to purchase the beer, to-wit, $3.50, was pitched on the ground, same being contributed by the three 70c each and that the defendant contributed 70c for himself and likewise 70c for the fifth man; whereupon the defendant picked up the money, to wit: $3.50, and remitted the same to a brewery in Kansas City, Missouri, and said brewery delivered to the carrier at Kansas City, Missouri, a case of beer addressed to the defendant at Iola, Kansas, and that upon the arrival of the same two of the five men who contributed to the purchase of the beer obtained the same at the express office and carried it into a one-story frame dwelling house located at No. 418 North Jefferson Avenue, same being Lot Five (5) in Block Twenty-nine (29) in the City of Iola, Allen County, Kansas, and the home of one of the contributors; that one other of the five appeared at said house shortly thereafter and within an hour or two hours thereafter the defendant and the fifth man who had contributed to the purchase of said beer, entered said house and there the five who had contributed to the purchase of the same, drank some of said beer as a beverage.

"(3) It is further agreed that the defendant did owe the fifth man for whom he contributed 70c, more than the amount of the sum contributed for him.

"(4) It is further agreed that the defendant and one other of said five contributors did not know that the beer was in the house on said Lot Five (5) in Block Twenty-nine (29) until some two hours after the same had been taken there by the others.

"(5) That at the time of the arrest of the defendant there was about six empty pint bottles in the beer case which had been consumed by all of the contributors to the fund to purchase the same and the remainder of the beer in said case was seized upon warrant issued out of the Police Court of the plaintiff city, and said beer is now in the custody of the Police Court.

"(6) That the dwelling house where the five gentlemen met and where they were when defendant was arrested, was the dwelling house of one of the contributors, to-wit: Barlow Crum, who was the head of a family and who resided therein with his family at the time and prior to said arrest, and that the defendant and four other gentlemen had never met at said place or at any other place for the purpose of drinking beer or other intoxicating liquors prior to the time when said arrest was made; neither had other persons prior to the time of said arrest resorted to said dwelling house for the purpose of drinking intoxicating liquors therein."

In addition to the foregoing, it was orally agreed at the trial as follows:

1. That the brewery which sold and shipped the beer to appellant from Kansas City, Missouri, had a legal right to sell the same.

2.. That the complaint was brought under the following provisions of an ordinance of the city:

"Section 135. SALE. That is [it] shall be unlawful for any person or persons to directly or indirectly sell or barter any spiritous, malt, vinous, fermented or other intoxicating liquors without first having taken out and having a permit to sell intoxicating liquors as provided by law, within the corporate limits of the City of Iola, Kansas.

"Section 139. INTOXICATING, SALES DEFINED. That all liquors mentioned in Section 1 hereof, and all other liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be intoxicating liquors, within the meaning of this ordinance. That giving away of intoxicating liquors, or any shifts or device to evade the provisions of this ordinance, shall be deemed an unlawful selling within the provisions of this ordinance."

Upon the foregoing facts the district court adjudged the appellant guilty of a sale of intoxicating liquor as charged in the first count of the complaint, and not guilty of the offense of aiding and abetting the keeping of a nuisance as charged in the second count.

*Altes H. Campbell,* and *John F. Goshorn,* for the appellant.

*G. E. Pees,* and *Travis Morse,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The learned judge of the district court, in summing up the case, stated that he realized its importance to the appellant and the public, and had carefully considered the constitutional amendment, the various acts of the legislature relating to intoxicating liquors, and the decisions of the supreme court, and that he was "irresistibly impelled to the conclusion that the ultimate good sought to be attained by such amendment and the various enactments of our legislature on the subject of intoxicating liquors is the total abolition of the use of intoxicating liquors as a beverage." The court then proceeded to find the defendant guilty of a sale, and not guilty of the unlawful use of intoxicating liquors by keeping or aiding and abetting in the maintaining of a nuisance as charged in the complaint.

The facts being settled, the single question to be determined is whether the appellant was guilty of a sale of intoxicating liquors contrary to law. If the thing procured had been seed wheat or provisions or binding-twine, or any other article of commerce except intoxicating liquors, no one would characterize the transaction as a sale or think of it as such. It was a purchase of something outside the state by a number of persons for their common use and enjoyment. The only sale was one which occurred in the state of Missouri, the sale by the brewery there to the defendant in Kansas and the other persons who joined with him in the purchase. The defendant had the same interest in the transaction as the others, and was no more the owner of the liquor when it arrived than each of those who had jointly contributed to the purchase price. No profit or advantage was to accrue to him more than to the

others. Of course, if the defendant actually sold the liquor, and the transaction was resorted to as a mere subterfuge to avoid the appearance of a sale, he would be guilty of a violation of the law; but we are unable from the facts to discover how the transaction here can be viewed as a subterfuge or device to avoid its being characterized as a sale. It appears to be a plain case of several persons uniting in the purchase of something for their common use and benefit. To constitute a sale there must be a consideration or price, a seller, a purchaser, and a delivery of the thing sold. The sale which occurred in Missouri was not made directly or indirectly by the defendant. The facts negative the idea that he was the agent of the brewery, or interested in the price paid for the liquor; or, in fact, that he acted in any other capacity than as a purchaser for himself and the others. Upon the facts, therefore, he could not be justly convicted of a sale. (*The State v. Cullins,* 53 Kan. 100, 36 Pac. 56; *The State v. Turner,* 83 Kan. 183, 109 Pac. 983.)

The writer, in addition to what is stated in the opinion of the court, feels constrained to add that the theory upon which the lower court decided the case proceeds upon an erroneous conception of the purpose sought to be accomplished by the prohibitory amendment and the statutes and ordinances enacted to carry it into effect. The declared purpose of that law is to prohibit, not the use, but the manufacture and sale of intoxicating liquors in this state. The use of such liquors as a beverage or for any other purpose is not prohibited except where the place or the manner in which they are used constitutes a nuisance. In *The State v. Barrett,* 27 Kan. 213, Justice Valentine, speaking for the court, used this language in reference to the prohibitory law:

"With regard to what should be done with the liquors, independently of their manufacture and sale, it was silent. The title to the act does not, in the slightest or most remote degree, refer to the use of the

liquor in the abstract. So far as the title of the act is concerned, after the liquor has been manufactured and sold, any person in the lawful and *bona fide* possession of it may use it as he sees fit; he may drink it, or burn it, or give it away, or he may use it in any other manner or for any other purpose to which his inclinations may lead him." (p. 219.)

To the same effect is *The State v. Standish*, 37 Kan. 643, 647, 16 Pac. 66.

It is true that the ultimate purpose of the prohibitory law is to make intoxicating liquors so difficult to obtain that the use of them within the state will be minimized. The proper use of such liquors, however, is still as lawful within the state as before the prohibitory law was enacted. One of the results of the law is that a person who desires to make lawful use of such liquors here must resort to the inconvenience of procuring them from outside the state.

Reversed and remanded, with directions to enter judgment for the defendant.

JOHNSTON, C. J., and BENSON, J., concur in the result.