No. 58,108

STATE OF KANSAS, *Appellant*, v. DONALD A. SCHILLING, *Appellee*.

(712 P.2d 1233)

Opinion filed January 17, 1986.

*Geary N. Gorup*, assistant district attorney, argued the cause and *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellant.

*Mike Roach*, of Mike Roach, Chartered, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the State following the dismissal of a criminal case in which the defendant, Donald A. Schilling, was charged with sale of marijuana in violation of K.S.A. 1984 Supp. 65-4127b(b)(3) and K.S.A. 1984 Supp. 65-4105(d)(13). The issues raised are whether the trial court erred in ordering the State to disclose the identity of a "confidential informant" known as "Susan," and whether the trial court erred in ordering the State to either comply with the disclosure order, dismiss the charges with prejudice, or show cause why the prosecutor should not be found in contempt of court.

The procedural and factual background is necessary to an

understanding of the issues. The case was commenced with the filing of a complaint/information on November 14, 1984. Each count charged the defendant with the sale of a quantity of marijuana. Count No. 1 charged an offense which allegedly occurred on March 10, 1984, count No. 2 charged an offense on June 8, 1984, and count No. 3 charged an offense on June 19, 1984. Preliminary examination was held on December 18, and at that time the State dismissed count No. 1 and the defendant waived preliminary hearing upon counts No. 2 and 3. On January 25, 1985, defendant filed a motion for an order requiring the State to identify the female informant and, in support of that motion, the defendant alleged that he would show to the court "that it appears that said informant was the causative factor in the connection between the Defendant and the State's case and that the testimony of the said individual is necessary for the furtherance of the defense of this case."

On February 8, 1985, the motion came on for hearing. Defendant did not appear in person but both parties appeared by counsel. No evidence was presented. Both parties concede that Susan introduced the defendant to the officers and was present throughout the March 10 transaction described in count No. 1; Susan was not present and had no part in the June transactions.

The defendant's attorney informed the court that the defense in this matter would be that of procuring agent; that the initial contact between the police officer who made the case and the defendant was made in the presence of the informant known to the defendant only as Susan. He stated that the defendant had a personal and sexual relationship with Susan but did not know her last name. He argued that a request from a friend to assist another person tends to make the defendant the agent of the buyer rather than the agent of the seller and thus Susan was a potential witness in the several transactions between the defendant and the State. Counsel also indicated that he thought he might have represented Susan in a separate proceeding in which she was granted probation and that counsel needed to know the name in order to determine whether or not he had a conflict of interest. The State argued that disclosure was not necessary for the defendant to receive a fair trial or be able to fairly present his defense, and that counsel's ethical problem did not weigh the balance in favor of disclosure. The trial court then ruled that the

informant would have information that would be material and relevant, and ordered disclosure of her full name. The prosecutor immediately said to the court that she was under the impression that evidence was to be presented (the detective was present at the hearing) and that defense counsel's statements differed substantially from the detective's story. The trial court responded that due process required that the defendant be given an opportunity to present his defense and that defense counsel had indicated the woman's name was relevant and material, regardless of what the evidence would be.

The State was granted a rehearing on March 29, 1985. Again, defendant was not present in person and appeared only by counsel. The State presented the testimony of Detective Mathews. He had first met the defendant at his place of employment pursuant to an earlier telephone call made by Susan. Mathews, Detective Doyle, Susan and the defendant drove to defendant's residence at his direction. Defendant went into the residence, returned a few minutes later, told them to drive to Molly Mae's club, and when they arrived there defendant produced a plastic baggie containing marijuana which Mathews bought, paying the defendant $60 for it. All four went into the club, where they remained for some thirty minutes. Susan danced for perhaps ten minutes and was at the table probably twenty minutes. Mathews told the defendant he was interested in purchasing ten to fifteen pounds of marijuana. Defendant said he knew an individual in Hutchinson who could possibly get that much, but he would have to check. Defendant also talked with another patron of the club who knew somebody who could get the drugs, but defendant did not know how quickly. Defendant stated that the money would have to be "fronted" (*i.e.*, paid in advance before the marijuana was produced) and the officers said that was not satisfactory. They would not agree to that arrangement. The rest of the conversation was small talk. The detective did not know whether Susan was present at the table when the conversation concerning future drug buys took place. Neither detective ever gave the defendant any money with which to buy drugs and neither ever indicated that he would do so. Mathews, Doyle and Susan left together; defendant remained at Molly Mae's.

Detective Mathews was transferred out of narcotics to another

department and did not work in an undercover capacity for several months. On June 7 he telephoned the defendant and set up a meeting on June 8. On that date he went to the defendant's residence, was admitted by an older woman, and went down a flight of stairs to defendant's room, where defendant handed him a large plastic baggie containing two smaller baggies. Defendant said he could take his pick of those two, as they were all he had left. The detective took one of the baggies and paid the defendant $55 for it. Laboratory examination disclosed that it contained marijuana. There was no testimony giving details of the June 19 incident.

Detective Mathews explained that count No. 1 should not have been included in the complaint, it being his intention not to charge the defendant with that offense since the informant was present throughout that transaction. At his request, count No. 1 was dismissed at the preliminary hearing. He testified that it is the policy of the department not to disclose the names of confidential informants except on order of the court. He said that neither he nor any member of his department would be in jeopardy if the name was released. He did not know the details of the prior charges against Susan, who her attorney was, or who her probation officer was. After the court's February order, Detective Doyle had attempted to contact Susan through the only relative of hers that he knew, but the relative did not know her whereabouts. Defense counsel argued that Susan was a material witness as to count No. 1 and was potentially needed as a witness to determine whether his client would receive a fair trial because of counsel's potential conflict of interest. The trial court then ordered the prosecuting attorney to either release the name or dismiss the case with prejudice by 4:00 o'clock that afternoon, or to show cause why she should not be found in contempt.

Further hearing was held at approximately 4:00 o'clock p.m. with an additional assistant district attorney present. He advised the court that Susan had participated in several other investigations resulting in convictions of major narcotics dealers, and that Detective Mathews was present and prepared to testify that there was good reason to believe that Susan's life would be jeopardized, or at least her well-being would be seriously jeopardized, if her name was released. Defense counsel did not

disagree with the statement, except he argued that her life was not in danger because her whereabouts were unknown. The trial judge stood by his order directing that either the name be disclosed or the State dismiss the case with prejudice. The prosecution requested the court to dismiss the case on its own motion. The court declined to do so. Under these circumstances, and under threat of contempt and remand of the prosecutor to the custody of the sheriff without bond, the State dismissed.

The first issue is whether the trial court erred in finding the confidential informant's identity was essential to a fair trial, and in ordering the State to disclose it. Entwined in this issue is defense counsel's potential conflict of interest problem. Apparently, from the record, the defendant was unsure of Susan's last name. He gave counsel a name which he thought was Susan's last name. It is similar to the last name of counsel's former client. Apparently counsel had not informed defendant of the name of his former client and does not wish to do so. This problem could have been easily resolved. The court could have required the State to supply the name directly to the court for an in camera examination, and could have required defense counsel to have similarly supplied the name of his former client. If the name matched, the judge would simply tell defense counsel that he had a conflict. The informant's name, by this process, would not be made public, and counsel's problem would be resolved. Thus, as we see it, the possible conflict of interest need not be considered in determining whether the disclosure of Susan's identity to the defendant is essential to assure him a fair trial.

K.S.A. 60-436 addresses the informer's privilege and states:

"60-436. Identity of informer. A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this state or of the United States to a representative of the state or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his or her identity is essential to assure a fair determination of the issues."

Susan's full identity has not been previously disclosed and thus subsection (a) of the statute is inapplicable. We must determine then whether disclosure was properly allowed under (b) as essential to assure a fair determination of the issues. Disclosure

is, of course, not a matter of right, but one within the sound discretion of the trial court.

The charges contained in count No. 1 have been dismissed. The defendant stands charged only with sales of marijuana on June 8 and June 19. Defense counsel stipulated that Susan had no contact with the two cases arising in June. She had nothing to do with setting up those meetings between Detective Mathews and the defendant and she was not present. Neither Mathews nor Detective Doyle have had any contact with her since March 1984.

Susan initially introduced Mathews to the defendant, thus bringing about the March sale. She was present when that sale took place. That sale, however, forms no part of the present charges against the defendant.

She may have been present when Mathews told the defendant that he was interested in purchasing ten to fifteen pounds of marijuana, when the defendant attempted to arrange that purchase through another patron of the club, when the defendant told Mathews that the money for such a purchase would have to be "fronted," and when Mathews and Doyle told the defendant that they would not agree to that sort of an arrangement. The first June sale was of a quantity of marijuana in a small plastic baggie—obviously not ten to fifteen pounds. Also, the only testimony before the court was that the money for that purchase was not fronted but was paid by the detective to the defendant at the time of the sale. There is no evidence indicating the amount of marijuana included within the June 19 charge, but there is nothing in the record to indicate that this was a major amount, ten to fifteen pounds, or that Detective Mathews gave the defendant the money with which to buy that marijuana before it was delivered.

The late Chief Judge Foth discussed K.S.A. 60-436 and its background at length in *State v. Knox*, 4 Kan. App. 2d 87, 93-99, 603 P.2d 199 (1979). The facts in *Knox* were similar to those in count No. 1 here. An undercover police officer accompanied by a local resident referred to as a "confidential informant" was introduced to Knox and in the presence of the confidential informant purchased from and paid Knox for a bag of marijuana. The trial court denied Knox's repeated motions for disclosure. The Court of Appeals reversed, noting that the informant was not a mere tipster but an intermediary who first suggested the crime,

introduced the participants, and witnessed the entire transaction. 4 Kan. App. 2d at 95. The court noted that the testimony of the informer might have disclosed entrapment, and might have controverted, explained or amplified defendant's conversations as related by the officer. Additionally, the prosecution placed before the jury evidence of the informer's reliability and thus bolstered the State's case without disclosing the informer's name, calling him to the stand, or subjecting him to cross-examination. (The prosecutor in the case at hand stated that the State had no intention of mentioning the informer in proving the pending counts.)

The Court of Appeals in *Knox* relied upon the leading case on the informer's privilege, *Roviaro v. United States*, 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623 (1957). There, Roviaro was charged with selling heroin to "John Doe" and in a second count with receiving, concealing, buying, and facilitating the transportation and concealment of heroin at the same time and place. The government successfully opposed defendant's request for disclosure of John Doe's identity. Roviaro was convicted of both counts. All of the criminal activity necessary to support both charges was committed in the presence of John Doe. The United States Supreme Court noted that this was a case where the informer was the sole participant, other than the accused, in the transaction charged. He was the only witness in a position to amplify or contradict the testimony of government agents who viewed the activity from some distance. The court concluded that the trial court committed prejudicial error in permitting the government to withhold the identity of the informer. It reversed and remanded the case. The court adopted a balancing test in the following language:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U. S. at 62.

We have frequently said that, before disclosure will be ordered, it is incumbent upon a defendant to show that the identity of the informer is material to his defense. *State v. Pink*, 236 Kan. 715, 722, 696 P.2d 358 (1985); *State v. Cohen*, 229 Kan. 65, 69,

622 P.2d 1002 (1981); *State v. Braun*, 209 Kan. 181, 186, 495 P.2d 1000, *cert. denied* 409 U. S. 991 (1972). It is also the rule that speculation and suspicion regarding what an informant might possibly testify to is not sufficient to require disclosure. *State v. Pink*, 236 Kan. at 722. Here, the defendant was not present at the hearing on his motion, he did not testify, and he did not offer any evidence to support his motion. The entire evidentiary basis for the trial court's ruling is the testimony of Detective Mathews, which we have detailed earlier in this opinion. Susan was present at the initial meeting and introduced the detective and the defendant. That certainly would provide no basis for a finding that her testimony would be material and essential to assure a fair determination of the issues presented on trial of counts No. 2 and 3. Likewise, if she was present and heard the discussion between the defendant and the detectives for sale of a large quantity of marijuana which resulted in the detectives stating that they were not interested because of the requirement that the money for such a quantity be fronted, her testimony of that conversation would not be material to a determination of the issues raised by counts No. 2 and 3.

The defense in this case is to be that of procuring agent. We have held that that is an available and appropriate defense in a drug or narcotics case. *State v. Osburn*, 211 Kan. 248, 505 P.2d 742 (1973); Note, *A Procuring Agent May Not Be Convicted of Narcotics Sale*, 22 Kan. L. Rev. 272 (1974); and see PIK Crim. 2d 54.14-A. The defense has usually arisen where one person has advanced money to the defendant in order that the defendant might purchase controlled substances from another for that person. See *State v. Osburn*, 211 Kan. at 249; *City of Iola v. Lederer*, 86 Kan. 347, 120 Pac. 354 (1912); *State v. Turner*, 83 Kan. 183, 109 Pac. 983 (1910); *State v. Cullins*, 53 Kan. 100, 36 Pac. 56 (1894); *Reed v. State*, 3 Okla. Crim. 16, 103 Pac. 1070 (1909); and in the cases relied upon therein. Here, there is no evidence that the detectives gave money to the defendant so that he might purchase marijuana for them, or that they agreed to do so, in the informer's presence or otherwise; all of the evidence is quite to the contrary. Further, there is no evidence as to when defendant purchased the marijuana. The only evidence before the trial court was that the defendant had marijuana in his possession and sold and transferred it to the detective. We fail to find anything in

the evidence which would support a finding that the informer's testimony would be helpful to the defendant in establishing a procuring agent defense to the June charges. Finally, the argument by defense counsel that defendant was more than an acquaintance of the informant, had been sexually intimate with her, and relied upon her initial request to supply marijuana to the detectives would not in our opinion indicate that she has any information which is essential to assure to the defendant a fair trial on the charges of the separate sales in June. Upon a thorough review of all of the evidence before the trial court, we conclude that there was no evidence to support the trial court's finding that disclosure of the informant's identity was essential to a fair trial. The trial court erred in ordering disclosure.

The final issue is whether the trial court erred in ordering the prosecutor to disclose the informant's identity, dismiss the case with prejudice, or be held in contempt of court. The order directing disclosure of the informant's identity was a discovery order governed by the provisions of K.S.A. 22-3212. Subsection (7) of that statute provides in applicable part that:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

As we observed in *State v. Jones*, 209 Kan. 526, 528, 498 P.2d 65 (1972):

"The clear import of this proviso . . . is to vest the trial court with wide discretion in dealing with the failure of a party to comply with a discovery and inspection order . . . ."

Dismissal is the most drastic sanction which can be applied. *State v. Winter*, 238 Kan. 530, 712 P.2d 1228 (1986). Nevertheless, the trial court may dismiss a case where failure to abide by the discovery rules prevents a fair trial. Since the trial court has that authority, there was no need for the trial court to invoke its contempt powers. The exercise of the trial court's authority to dismiss would be fully sufficient. We can find no case and no statutory authority for the proposition that the trial court can order the prosecution to dismiss a criminal case with prejudice for failure to make discovery and to proceed against

the individual prosecutor in contempt. A trial court has the authority to enforce its discovery orders, and sanctions are sometimes necessary to compel compliance. The least drastic sanctions which will accomplish the objective should be employed. *State v. Winter,* 238 Kan. 530, Syl. ¶ 4. Here, there was no occasion for a contempt proceeding.

This case was not dismissed voluntarily by the State, but was dismissed involuntarily upon order of the trial court. The State's appeal, therefore, is "[f]rom an order dismissing [an] . . . information" and may be taken as a matter of right. K.S.A. 22-3602(b)(1). We have jurisdiction of this appeal under the cited statute.

Jeopardy is defined by K.S.A. 21-3108(1)(c) as follows:

"A defendant is in jeopardy when he or she is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn, or where the case is tried to the court without a jury, when the court has begun to hear evidence."

A trial jury had not been impaneled in this case, nor had trial begun before the court. Accordingly, defendant was not in jeopardy. The charges remain pending and undetermined before the district court.

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

PRAGER, J., dissenting and concurring: I respectfully dissent from that portion of the opinion holding that the trial court abused its discretion in ordering the prosecution to disclose the identity of a confidential informant. This court has consistently held that the disclosure of the identity of an informant lies within the sound discretion of the court whose discretion will not be overturned unless an abuse of discretion is shown. *State v. Pink,* 236 Kan. 715, Syl. ¶ 2, 696 P.2d 358 (1985); *State v. Nirschl,* 208 Kan. 111, 115, 490 P.2d 917 (1971).

Judicial discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken, then it cannot be said the trial court abused its discretion. *State v. Wilkins,* 220 Kan. 735, 556 P.2d 424 (1976). I cannot in good conscience agree that the trial court abused its discretion under the circumstances shown in the record in this case.

As pointed out by Justice Miller in the majority opinion, the factual circumstances are to a great extent undisputed. The informant was known personally to the defendant as Susan, but he did not know her last name. On March 10, 1984, Detective Mathews requested Susan to contact the defendant to arrange for the purchase of narcotic drugs. Detective Mathews, accompanied by another detective and Susan, first met the defendant at his place of employment pursuant to an earlier telephone call made by Susan. The four people then drove to the defendant's residence. Defendant went into the residence, returned a few minutes later, and they then drove to Molly Mae's club. When they arrived there, defendant produced a plastic baggie containing marijuana which Mathews purchased. The evidence is undisputed that all four then went into the club and sat at a table where they had conversation for 30 minutes. Susan danced for about 10 minutes but was present for 20 minutes during the conversation at the table. According to Detective Mathews, during the conversation he discussed future drug buys with defendant. Detective Mathews testified that he did not know if the informant was present during the entire conversation or any part of it. According to Detective Mathews, he informed the defendant that he was interested in purchasing a large amount of marijuana and defendant responded that he knew an individual in Hutchinson who could possibly get that much and that he, the defendant, would have to get back to him. This was clearly evidence tending to show that it was contemplated that defendant would act as procuring agent for Detective Mathews, because another individual in Hutchinson was to be contacted to obtain drugs.

In addition, Detective Mathews testified that defendant also talked with another member of the club who knew somebody but didn't know how quickly he could get that large an amount of drugs. Defendant also mentioned that there was someone from whom he could get LSD but that the money would have to be "fronted." The officer told the defendant that was not satisfactory. From this testimony, it could be concluded that Detective Mathews and the defendant contemplated future drug buys in which the defendant would act as the procuring agent for Detective Mathews.

The procuring agent defense is a recognized defense to a

charge of sale of narcotic drugs. A procuring agent for the purchaser is a person who, by agreement with the purchaser, buys or procures an article or substance from a third party at the request of and for the purchaser. The agreement may be written, oral, or implied by the parties. The defendant would not be a procuring agent if he acted as a seller or an agent for the seller. The leading case on the procuring agent defense in narcotic cases is *State v. Osburn*, 211 Kan. 248, 505 P.2d 742 (1973). In *Osburn*, it was held that a procuring agent for a purchaser of drugs may be guilty of unlawful possession of the drug, but he is not guilty of an unlawful sale in procuring the unlawful substance. In a prosecution for the unlawful sale of narcotics, when the defense of procuring agent is raised, the decision as to whether the accused acted as a procuring agent of the buyer or was the seller of the narcotics is a question of fact for the jury to determine from the evidence.

It is clear that the defense of procuring agent is determined by the relationship between the defendant and the police officer who requested the purchase. The fact that a drug sale or sales actually took place is usually undisputed. The relationship of procuring agent and buyer is not determined at the time of the delivery of the drug, but at the time the agreement is made that the defendant shall deliver the drug at a future time. In the present case, the fact that the informant Susan was not present at the time drugs were delivered on June 8, 1984, and June 19, 1984, as alleged in Counts 2 and 3 of the information, is not significant. Under the evidence presented by Detective Mathews at the hearing, Susan could have been present at the time future sales of drugs were discussed and could have informed the jury as to what was said, thus shedding light on the relationship between Detective Mathews and the defendant, Donald A. Schilling.

At the hearing on the motion to disclose, counsel for the defendant informed the court that the defense to be asserted in the case was that of procuring agent. The informant may provide testimony which will be highly relevant on that issue. If that testimony can be obtained by defense counsel's search for the whereabouts of Susan, why is it not fair and just to require the name of the witness to be disclosed by the prosecution, so that defense counsel can attempt to locate her? How can it be said

that no reasonable man would require the prosecution to disclose the *name* of the informant in this case. The following factors, in my judgment, clearly show the reasonableness of the trial court's order:

(1) It was Detective Doyle who initiated the contact with the defendant using defendant's prior relationship with the informant.

(2) It was Detective Doyle who suggested to defendant that he desired to purchase narcotic drugs.

(3) At the time the discussion of future sales took place, defendant suggested a third person in Hutchinson might be contacted to obtain the narcotic drugs.

(4) At Molly Mae's on the night of March 10, 1984, defendant discussed with another patron of the club the possibility of obtaining narcotic drugs at a future time.

(5) The discussion of future drug sales took place at the table in Molly Mae's, and the informant may have been present to hear those discussions.

(6) Detective Mathews testified that the informant is not now actively working any cases for the Wichita police department as a confidential informant.

(7) Detective Mathews testified that releasing the name of the informant would not place him or any member of his staff in danger.

(8) Detective Mathews testified, in substance, that he refused to disclose the name of the informant as a matter of department policy. He never reveals the names of confidential informants.

(9) The defendant is acquainted with Susan, the confidential informant, although he is uncertain as to her last name. Thus, her *identity* is actually known to the defendant. He needs her last name only so that he can attempt to locate her and have her as a witness at his trial.

In *Roviaro v. United States*, 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623 (1957), the United States Supreme Court discussed the so-called "informer's privilege" in the following language:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. [Citations omitted.] The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the

commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." 353 U.S. at 59-61.

It is important to note that one of the limitations on the applicability of the informer's privilege arises from the fundamental requirements of fairness. *Roviaro* makes it clear that disclosure is ordinarily required where the circumstances of the case determine that the informant's possible testimony is highly relevant and *might be helpful to the defense.* The test is thus whether or not the informant's testimony might be helpful to the defendant by providing relevant testimony on the basic issue of fact in the case.

As pointed out in the majority opinion, the leading case in Kansas on the informer's privilege is *State v. Knox,* 4 Kan. App. 2d 87, 603 P.2d 199 (1979). *Knox* points out no fixed rule with which respect to disclosure of the identity of an informant is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the *possible* defenses, the *possible* significance of the informer's testimony, and other relevant factors. As determined in *State v. Knox,* where the informer could provide relevant testimony at trial going to guilt or innocence, which *may possibly* be of assistance to the defense, this factor will normally outweigh the State's interest in nondisclosure.

I respectfully disagree with the majority opinion in this case that the trial court abused its discretion in ordering disclosure of the name of the informer. The undisputed factual circumstances have been set forth heretofore. In my judgment, a reasonable

person could conclude that fundamental fairness requires disclosure of the name of the informant, Susan.

I concur, however, with the conclusion of the majority that the trial court erred in ordering the prosecution to either disclose the identity of the informant, dismiss the case with prejudice, or be held in contempt of court. I agree that a trial court may dismiss a criminal case for failure of the prosecution to disclose the name of an informant. Because the trial court has that authority, there was no need for the trial court in this case to invoke its contempt power and to order the prosecution to either dismiss the case or be in contempt. The trial court should simply have given the prosecution a reasonable time to furnish the name of the confidential informant and, if the name was not furnished by that date, the trial court should then have dismissed the case. That would have been the appropriate action for the trial court to have taken.