No. 62,063

STATE OF KANSAS, *Appellee,* v. LUTHER C. WASHINGTON, *Appellant.*

(772 P.2d 768)

Opinion filed April 14, 1989.

*Charles D. Dedmon,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Mona Furst,* assistant district attorney, argued the cause, and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The defendant, Luther C. Washington, was charged with one count of possession of heroin, a class B felony, in violation of K.S.A. 1988 Supp. 65-4127a, and one count of possession of marijuana, a class D felony, in violation of K.S.A. 1988 Supp. 65-4127b. Following a trial to the court, the defendant was convicted on the heroin count and acquitted on the marijuana count. The defendant was sentenced to a term of imprisonment of 5 to 20 years for the possession of heroin conviction. Defendant appeals the conviction.

On May 5, 1987, Wichita police officers entered a motel room occupied by defendant pursuant to a search warrant issued the same day. Probable cause for the search warrant was based upon information received by a confidential informant who informed

the police that he had previously purchased heroin at the motel. A Wichita police officer stated in the application for a search warrant that he had observed the informant make a "controlled buy" in Room 121 of the motel, returning from the room with heroin which had not been on his person prior to entering the motel.

When the police officers executed the warrant, they found the defendant alone in the motel room "standing just outside of the bathroom door looking at the door as we were coming in." One of the officers present testified at trial that the defendant immediately went into the bathroom of the motel room. When the officer reached the bathroom, he noticed that the defendant "had his hand inside the toilet, that the toilet had been flushed, the water was circulating and going down. The individual was still holding a plate and in a sideway motion was moving the plate in the water as if he was washing it."

The defendant was then arrested and the officers commenced a search of the motel room. Police recovered apothecary bowls, spoons, a syringe, scales, a white powder found in a suitcase, a green balloon from the top of the dresser, and a baggie containing a "green botanical substance" from the motel nightstand. A Wichita police department chemist testified that his tests revealed that the green botanical substance was marijuana. The green balloon yielded a tan powder which, according to the testimony of the police chemist, tested "[p]ositive for heroin."

The motel room was registered in the name of James Evans. A Wichita police officer testified that the name James Evans did not appear in their computer. The motel room was under police observation for approximately an hour and a half prior to the execution of the search warrant, and the police observed a number of persons come and go from the motel room. The district court concluded that there was sufficient evidence that the defendant was guilty of the charge of possession of heroin, but that there was insufficient evidence to convict on the marijuana charge. The court stated:

"The evidence of trying to destroy evidence was successful by running to the bathroom in a time-honored way of flushing drugs down the drain. If it was marijuana, it would have been floating around in there.

"I am afraid I am convinced that there is circumstantial evidence from which I conclude it's been proven beyond a reasonable doubt Mr. Washington was in possession of heroin. No evidence of any needle marks. There were two suitcases, as I recall, in the room. There is no question that he was there, but I think

that, there is no proof that he is the one that rented the room. He was just there, in possession, whoever was in possession was expecting a lot of visitors to get a lot of drugs, but there wasn't any supplies there, either. Sure wouldn't be time to take it all and flush it down the stool if they came in unexpectedly and it must have been unexpected because when he saw them he ran for the bathroom. So I am going to find there is a reasonable doubt of Count 2, but I am going to find he was guilty of Count 1. The reason I conclude that is I am not sure possession of that residue—it shows an activity going on at the time. That's what I am finding, Mr. Washington, that you were in possession of it.

"I am going to state exactly what I am relying upon so that if in law this evidence is insufficient, there will be an adequate record.

"I am relying upon the presence of paraphernalia, measuring devices, mortar, pestle, mixing devices, balloons in which it's commonly kept in which a residue was found and the testimony that you were swishing that plate in the toilet, and you had to be familiar with it. At least, you knew where the toilet was. If you were just taken by surprise in there and didn't know whose they were, there wouldn't . be any reason to destroy whatever it was.

"So I think they have proved that. But absent any, bringing any clerk or anybody to say that you rented that room, they may be correct in their theory that you were using that name, but there is so much more in that line that I am choosing not to rely on that. Strong conjecture, a good surmise, is different than proof beyond a reasonable doubt."

The defendant first challenges the sufficiency of the evidence against him. In addressing this issue, we must determine whether the evidence, viewed in the light most favorable to the prosecution, could convince a rational factfinder that the defendant was guilty of the charges beyond a reasonable doubt. *State v. Walter*, 234 Kan. 78, 82-83, 670 P.2d 1354 (1983). We have held that possession of a controlled substance requires specific intent to exercise control over the substance, with knowledge of the nature of the substance. See *State v. Faulkner*, 220 Kan. 153, 156, 551 P.2d 1247 (1976). The possession of a controlled substance may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. *State v. Bullocks*, 2 Kan. App. 2d 48, 49-50, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978). Proof of the required elements for possession of a controlled substance may be established by circumstantial evidence. *State v. Anthony*, 242 Kan. 493, 502-03, 749 P.2d 37 (1988); *State v. Faulkner*, 220 Kan. at 160; *State v. Rose*, 8 Kan. App. 2d 659, 664, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983); *State v. Bullocks*, 2 Kan. App. 2d at 49.

The defendant argues that the district court's reasoning was based upon inferences not supported by the evidence. However,

we think sufficient evidence exists to support the conviction regardless of the inferences made by the court. The motel room was under police surveillance for approximately an hour and a half prior to the execution of the search warrant. Several people were observed entering and leaving the room during the police surveillance, but the defendant was not one of them. The defendant was alone in the motel room in which heroin was found to be present. The defendant demonstrated some control over the contents of the motel room by apparently attempting to conceal and destroy material contained in the room. We note, on the other hand, that the inferential value of the circumstantial evidence present in the case is somewhat limited. Other persons had also been present in the motel room, though they were not present at the time that the police executed the search warrant. There is apparently no evidence with regard to the substance that was actually on the dish that the defendant attempted to clean in the motel toilet. The district court's conclusion that the substance on the dish must have been heroin, since marijuana would have floated and been observable in the toilet bowl, is conjectural at best. However, viewing the evidence in the light most favorable to the State, we find there is sufficient evidence to support the conviction of the defendant for possession of heroin.

The defendant also contends that the police chemist failed to adequately identify the tan substance as heroin. The defendant contends that the chemist's opinion that the tan powder tested "positive for heroin" does not foreclose the possibility that the substance was not heroin, but merely establishes that it was a material sharing some of the chemical characteristics of heroin. We do not agree; however, the defense made no objection at trial to the form of the chemist's opinion. Instead, the only objections made by the defense during the chemist's testimony were foundation objections, arguing that the chemist had not been demonstrated to be competent to administer the chemical tests. Since this issue was not presented to the trial court, it will not be considered on appeal.

The defendant next challenges the district court's refusal to order the State to identify the confidential informant, contending that the district court's decision violates the provisions contained in K.S.A. 60-436. The defendant also contends that the refusal of

the district court to order the identification of the informant violated his rights to substantive and procedural due process. K.S.A. 60-436 provides:

"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this state or of the United States to a representative of the state or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his or her identity is essential to assure a fair determination of the issues."

The privilege contained in K.S.A. 60-436 is closely modeled on the decision of the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957). See *State v. Knox*, 4 Kan. App. 2d 87, 93-94, 603 P.2d 199 (1979).

In *Roviaro*, the leading case discussing the so-called "informer's privilege," the Court stated:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. [Citations omitted.] The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." 353 U.S. at 59-61.

In his substantive due process argument, the defendant contends that a third limitation on the informer's privilege also exists under the United States Supreme Court opinion in *Roviaro*, although it is not included in the statutory language of K.S.A. 60-436. The defendant contends that *Roviaro* establishes a broader limitation upon the informer's privilege than that recognized by K.S.A. 60-436, relying upon the *Roviaro* Court's

statement that the State must reveal evidence relating to a confidential informant when it *"is relevant and helpful to the defense of an accused,* or is essential to a fair determination of a cause."* (Emphasis added.) 353 U.S. at 60-61. The defendant contends that the emphasized language establishes a stronger limitation upon the informer's privilege than that recognized by the statute.

We find no merit in the defendant's argument. The alternative phrasing used in the cited portion of the *Roviaro* opinion need not, and should not, require the adoption of two separate tests. Instead, the two tests may be seen to be synonymous: If the State refuses to disclose the identity of a confidential informant who could provide evidence "relevant and helpful to the defense," it inherently prejudices the fairness of the trial. The "relevant and helpful" language in the *Roviaro* opinion should be viewed as an implicit standard contained within the fair trial requirement, rather than providing a separate, independent, and different standard. The standard of review of the district court's decision in the present case is therefore the same under K.S.A. 60-436(b) and under the due process considerations recognized in *Roviaro*: Whether the informant could provide information essential to a fair trial by providing information relevant and helpful to the defense.

Relying upon the decision of this court in *State v. Schilling,* 238 Kan. 593, 712 P.2d 1233 (1986), the State argues that the defendant had the burden to establish that the informant's testimony would, in fact, materially assist his defense. According to the State's interpretation of *Schilling,* a demonstration by the defendant that the testimony of the informant could potentially assist his defense is insufficient to require the disclosure of the informant's identity.

In *Schilling,* this court held:

"[B]efore disclosure will be ordered, it is incumbent upon a defendant to show that the identity of the informer is material to his defense. [Citations omitted.] It is also the rule that speculation and suspicion regarding what an informant might possibly testify to is not sufficient to require disclosure." 238 Kan. at 599-600.

See *State v. Pink,* 236 Kan. 715, 722, 696 P.2d 358 (1985); *State v. Braun,* 209 Kan. 181, 186, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972). However, we have also recognized that the necessity for the revelation of an informant's identity will depend upon the

circumstances present in each case. "Each case must be decided on its own merits." *State v. Braun*, 209 Kan. at 184. See *State v. Pink*, 236 Kan. at 722. The circumstances present in this case necessarily lead us to the conclusion that the potential exists for the informant's testimony to be exculpatory and thus material to defendant's case.

In determining if the State is required to reveal an informant's identity, it is important to distinguish between two types of informants: Those who merely furnish to the police information which establishes probable cause, and those informants who actually participate in or observe the criminal activity of the defendant and are therefore in a position to provide independent evidence relevant to the defense of the case. See *Roviaro*, 353 U.S. at 59-61; *McCray v. Illinois*, 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967); *State v. Knox*, 4 Kan. App. 2d at 94-96. This distinction between the two types of informants was expressly adopted by this court in its decision in *Pink*, 236 Kan. at 721-22.

The decisions of this court in *Schilling*, *Pink*, and *Braun*, requiring the defendant to demonstrate the materiality of the informant's identity or his testimony in order to secure the disclosure of the informant, all involved the first type of informant discussed above—the "mere tipster." See *State v. Knox*, 4 Kan. App. 2d at 95. In *Braun*, the defendant "failed to show that the informer participated in the offense or that the informer was in any way a material witness" to the charged crimes. 209 Kan. at 186. Similarly, in *Pink*, the court concluded that "the informant was a mere 'tipster' whose information precipitated the investigation," but had not been shown to possess independently relevant knowledge of the charged crimes. 236 Kan. at 723. Finally, in *State v. Schilling*, the informant had been shown to possess information relating only to a sale of marijuana which occurred some three months prior to the marijuana sales which formed the basis for the charges against the defendant. 238 Kan. at 598.

Where the informant in a criminal case has only the status of a "mere tipster" by simply providing law enforcement officers with the probable cause to conduct a criminal investigation of the accused, and does not otherwise appear to have direct knowledge of the events forming the basis of the criminal charges against the defendant, the rule recognized in *Schilling*

and its predecessors applies—the defendant must affirmatively demonstrate the relevance and materiality of the informant's identity or his testimony. However, when the informant may logically possess information directly relevant to the alleged criminal events themselves, further inquiry is required by the court.

In the present case, the informant is not a "mere tipster," whose sole importance to the case was his providing information to support the search of the motel room based upon probable cause. The informant was present at the alleged crime scene immediately prior to the defendant's arrest. It is particularly important to note the extremely circumstantial nature of the evidence against the defendant. The defendant was found present, alone, in a motel room in which a bag containing heroin was also found. There is no direct evidence that the defendant was in actual possession of heroin at the motel. Indeed, marijuana was also found in the motel room, but the district court apparently concluded that the circumstantial evidence was insufficient to support a conviction for possession of marijuana.

The testimony of the informant was therefore "highly relevant and might have been helpful to the defense." *Roviaro*, 353 U.S. at 63-64. Several other persons had been present in the motel room on the day the police received the informant's tip. The informant was therefore in a position to provide critical evidence relating to the defendant's alleged possession of the heroin. If the informant had testified that one of the other persons present in the motel room was the owner or seller of the heroin, it could have materially assisted the defendant's case. Because the informant was not a "mere tipster," and obviously possessed knowledge which is relevant and may have potentially assisted the defendant in defending the charges against him, the district court erred in refusing to require the identification of the informant without first conducting an in camera hearing to determine if the testimony of the informant would assist the defendant in his defense. In *State v. Pink*, 236 Kan. at 722, this court recognized that an in camera hearing would ease the "very harsh" evidentiary burden on defendants to establish the nature and relevance of the informant's testimony. We said:

"Although this evidentiary burden which is placed on the defendants appears to be very harsh, it is eased by the *in camera* disclosure to the court. If the judge

had found a reasonable probability that the informant could give needed testimony, the government would have been required to disclose the informant's identity. [*State v.*] *Knox*, 4 Kan. App. 2d at 99. However, the judge found *in camera* that the informant's testimony was not needed on the issue of guilt or innocence. . . .

. . . .

"We are satisfied that the informant was a mere "tipster" whose information precipitated the investigation that led to the defendants' arrest. That fact alone is insufficient to compel disclosure of the information. *United States v. Buras*, 633 F.2d 1356 [(9th Cir. 1980)]; *Bourbois v. United States*, 530 F.2d 3 (5th Cir. 1976); *State v. Grider*, 206 Kan. 537, 479 P.2d 818 (1971). There was no error in the trial court's refusal to disclose the informant's identity." 236 Kan. at 722-23.

In *Gaines v. Hess*, 662 F.2d 1364 (10th Cir. 1981), the Tenth Circuit, presented with facts very similar to the present case, found that an in camera hearing provided an effective procedure for the determination of whether, in a particular case, due process concerns required the disclosure of the informant's identity:

"Thus, the informant could testify directly to the critical issue in the case: whether Gaines was the seller. The informant's existence was revealed by Bemo's testimony, and the informant was the only one mentioned in the record, other than Gaines himself, who could corroborate or discredit Bemo's testimony. On these facts, it would violate Gaines' due process rights to deny disclosure if in fact the informant could provide potentially significant exculpatory testimony.

"Under these circumstances, an *in camera* hearing is the appropriate procedural vehicle for determining whether the informant's testimony would lend significant credence to Gaines' defense. Such a procedure will limit the extent of the disclosure of the informant's identity and information, thereby protecting the State's interest in avoiding unnecessary disclosure, while at the same time it will safeguard defendant's right to the testimony of any accessible witness who may be significantly helpful to his defense. This court recognized the value of this procedure in *United States v. Martinez*, 487 F.2d 973, 977 (10th Cir. 1973). Numerous other circuits have approved the *in camera* hearing as a device to ensure proper application of the *Roviaro* test. [Citations omitted.] The *in camera* procedure has the advantage of giving the trial court considerable flexibility in determining if disclosure is warranted. For instance, where identity is at issue, the informant might be shown a picture of the defendant. *See, e.g., United States v. Doe*, 525 F.2d 878 (5th Cir.), *cert. denied* 425 U.S. 976, 96 S. Ct. 2179, 48 L. Ed. 2d 801 (1976). We leave to the discretion of the trial court how best to determine the relevance of the informant's testimony, although the *in camera* proceedings should be transcribed and sealed to permit meaningful review while retaining limited disclosure. *See McLawhorn* [*v. North Carolina*], 484 F.2d at 5 n.13." 662 F.2d at 1368-69.

We agree and hold that it was error to deny the defendant's motion to disclose the identity of the confidential informant without first conducting an in camera hearing. In so holding, we

do not reverse the defendant's conviction but remand the case to the district court with directions to conduct an in camera hearing to determine if the confidential informant's testimony is relevant and helpful to defendant's defense. If it is, then the defendant should be granted a new trial and the identity of the confidential informant should be disclosed to the defendant.

The final issue raised by the defendant is that the district court abused its discretion in failing to grant a continuance. On the day of the trial, the defendant's request for a continuance of several days was denied. The decision whether to grant a continuance lies within the sound discretion of the trial court. *State v. Hartfield*, 9 Kan. App. 2d 156, 159, 676 P.2d 141 (1984). We have carefully reviewed the record and find no abuse of discretion.

The case is remanded to the district court for further proceedings consistent with this opinion.