(603 P.2d 199)

No. 50,636

STATE OF KANSAS, *Appellee,* v. MIKE KNOX, *Appellant.*

Opinion filed November 21, 1979.

*John C. Laman,* of Laman Law Office, of Concordia, for the appellant.

*Larry S. Vernon,* county attorney; *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., ABBOTT and REES, JJ.

FOTH, C.J.: Mike Knox appeals from his conviction by a jury of one count of the sale of marijuana and one count of possession of marijuana. He raises two major arguments, each affecting one of the two charges. Although the charges arise out of separate incidents, the underlying facts are intertwined and will be recounted together.

Both charges grew out of the activities of one J. Joaquin Padilla, an undercover agent of the Kansas Bureau of Investigation assigned to investigate drug activities in the Cloud County area in late 1977 and early 1978. Padilla engaged the services of a local resident to help him penetrate the local drug scene. The local resident, referred to by the parties as a "confidential informant," was paid at least $20 for his services. Those services consisted of introducing Padilla to suspected drug dealers, and apparently vouching for his trustworthiness, so that Padilla could make "buys."

The identity of the local resident became an issue before and at trial, and remains one on appeal, because the only witness who testified as to the transaction underlying the sale charge was Padilla.

That testimony was essentially as follows:

On the evening of January 24, 1978, Padilla and his informant were in a Concordia tavern looking for business. The defendant Knox came in, and the informant introduced him to Padilla, saying they were in the market for marijuana. Padilla and Knox entered into negotiations for Padilla to purchase a quarter pound of Columbian marijuana. After some unsuccessful haggling over the price of a quarter pound, Padilla agreed to buy a "bag" for $40. Knox and an unidentified friend left the tavern together; some twenty minutes later Knox returned and indicated he was ready to deliver the merchandise.

Padilla, Knox, and the informant left the tavern and proceeded to a car apparently under Knox's control. Knox got into the driver's seat, Padilla the front passenger's seat, and the informant the back seat. Knox reached into the back seat and produced four clear plastic bags, presumably containing an ounce of marijuana each. Knox offered the quarter pound for his previous asking price of $140; Padilla stuck to his previous top limit of $130. When it was clear that the previous impasse continued, Knox pulled yet another bag of "green vegetation" from his pocket, handed it to Padilla, and received the previously agreed upon $40.

After making the buy Padilla and his informant returned to Padilla's motel room where Padilla marked the merchandise for evidentiary purposes, sealed it in a zip lock bag, and put it in a locked metal box. Padilla then put the box in the trunk of his car for later delivery to the KBI laboratory. The evening being still young, Padilla and the informant then ventured forth into Concordia's night life in a successful search for more business.

Over a period of some three months Padilla made buys in the same general manner from approximately ten different individuals in the Cloud County area. On March 10, 1978, Padilla and a local police officer appeared before the Honorable Marvin L. Stortz, district magistrate judge, to secure warrants for the arrest of the sellers. Judge Stortz placed Padilla under oath and ques-

tioned him as to the background of the proposed warrants. Although he did not recount the details of each purchase separately, Padilla testified as to his general method of operation and assured the judge that he had personally purchased drugs from each of the proposed defendants as alleged in the complaints and warrants. The judge was satisfied as to the existence of probable cause in each case and took Padilla's signature in verification of each complaint. The judge then signed the requested warrants, including one for the arrest of defendant Knox for the January sale.

Knox was arrested on the warrant later that day by two Concordia police officers. A patdown search at the time of the arrest turned up a package of five marijuana cigarettes. They formed the basis for the second charge, possession of marijuana.

The two cases were consolidated for trial, at which defendant was convicted by a jury of both counts. This appeal followed.

I.

Defendant's first point goes to the possession charge. He claims his arrest was illegal, the resulting search was therefore also illegal, and that the cigarettes found on him at that time should have been suppressed as the fruit of the poisonous tree. His argument on this issue has both a substantive and a procedural aspect: substantively, that there was insufficient evidence presented to the magistrate to give rise to probable cause; and procedurally, that the warrant was not issued according to the mandates of *Wilbanks v. State,* 224 Kan. 66, 579 P.2d 132 (1978).

A. There was a pretrial hearing on defendant's motion to suppress at which Judge Stortz testified as to the probable cause hearing he had conducted. His testimony, fairly read, was that even though he didn't know Padilla, a local police officer whom he did know introduced Padilla as a KBI agent. Beyond that, his testimony was as outlined above. Each buy was not separately detailed by Padilla, but the fact of each was sworn to from personal knowledge. Where a police officer, or any other person whose veracity is not subject to known infirmity, swears that he personally observed the commission of a crime a magistrate is justified in finding probable cause to believe it was committed. *Wilbanks,* 224 Kan. at 76. That was the thrust of Padilla's testimony before Judge Stortz. In addition, where the witness or affiant claims to know the identity of the perpetrator from personal observation, the magistrate may reasonably conclude that

there is probable cause to believe the crime was committed by the identified person. Defendant's substantive claim is without merit.

B. Defendant's procedural argument is that the facts from which Judge Stortz found probable cause were never recorded, *i.e.*, they were not presented by affidavit and the judge had neither a court reporter nor an electronic recording device available to him. He relies particularly on the statement in *Wilbanks* where the court, in discussing probable cause requirements for an arrest warrant, observed:

"It is preferable, and the most desirable practice, to include probable cause information in the body of the complaint. However, we recognize that under the statute a separate affidavit or affidavits may be filed with the complaint, or sworn testimony may be offered. *Such testimony should be recorded and preserved, either by a court reporter or through electronic means.*" 224 Kan. at 76. Emphasis added.

To read this as imposing a mandatory requirement is, we think, reading too much into it; the court is speaking of preferred practice in most cases, not required practice in all cases. The court states, for example, that it is preferable to include probable cause information in the complaint. Yet if an essential part of that information is a confession, putting it in the complaint may require expurgation before the complaint is made accessible to a jury. In such a case it is clearly preferable that the information *not* be included in the complaint but be supplied by separate affidavit or testimony.

If oral testimony is taken, as here, instead of or in addition to the sworn written statement, recording provides obvious advantages if the substance of the testimony later becomes an issue. Here, however, that issue was raised while the magistrate still had an independent if not perfect recollection of the testimony presented. The situation was no different than if a tape were garbled or erased or a reporter's notes lost or unintelligible. In the absence of such a record, reconstruction from the memory of participants is acceptable if sufficiently reliable for the purpose for which made. See *e.g.*, Rule No. 3.04 (224 Kan. xxxvii). The magistrate's testimony here was basically unchallenged as to accuracy and furnished an adequate basis for a later appraisal of his probable cause determination. We conclude that the failure to record the probable cause hearing was not fatal to the warrant.

The result is that the warrant was properly issued on probable cause and defendant's arrest was not illegal. The marijuana seized

as an incident to that arrest was therefore properly admitted into evidence, and the resulting conviction for possessing it is affirmed.

## II.

The more serious problem, and one requiring reversal, arises from the trial court's repeated refusal to require the State and its star witness Padilla to reveal the identity of the "confidential informant" who is said to have introduced the agent Padilla to defendant, to have made the initial proposal to defendant to purchase the marijuana, and to have observed both the preliminary negotiations and the actual transaction on which the sale charge was based.

The defense raised the issue in two ways. First, it asked for the informant's name by pretrial discovery motion. That was denied. Then, during trial, Padilla was asked on cross-examination to name the informant. The State's objection was sustained on the grounds of privilege.

These rulings must be based on statute because, under K.S.A. 60-407:

"Except as otherwise provided by statute  .  .  .  (d) no person has a privilege to refuse to disclose any matter or to produce any object or writing, and (e) no person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any object or writing, and (f) all relevant evidence is admissible."

Thus in Kansas there are no common law privileges; all relevant evidence is admissible unless there is a statutory ground for excluding it.

To sustain the claim of privilege the State relies on K.S.A. 60-436:

"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this state or of the United States to a representative of the state or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his or her identity is essential to assure a fair determination of the issues." Emphasis added.

This is a codification of what was known to the common law as "the informer's privilege." The leading case in which it is discussed is *Roviaro v. United States,* 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623 (1957). The Court there characterized it as follows:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. [Citations omitted.] The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." 353 U.S. at 59-61.

A comparison of this language with our statute demonstrates an almost exact parallel. There is a general privilege subject to two exceptions: (a) where the identity is known to those who would "resent" the communication, and (b) where the identity would be helpful to the defense and is therefore essential to a fair trial.

The *Roviaro* Court noted that informers come in two varieties: those who merely furnish information to the police, generally relied on to establish probable cause; and those who actually participate in or observe the criminal activity. 353 U.S. at 61.

The distinction was further recognized in *McCray v. Illinois,* 386 U.S. 300, 18 L.Ed.2d 62, 87 S.Ct. 1056 (1967). In *McCray* an informer's tip had led to a warrantless arrest followed by a search revealing heroin. At a suppression hearing the informer's identity was withheld, the heroin was later admitted into evidence, the defendant was convicted, and the conviction was affirmed by the Illinois Supreme Court. The U.S. Supreme Court found no constitutional flaw in the well-settled Illinois rule:

"When the issue is not guilt or innocence, but, as here, the question of probable cause for an arrest or search, the Illinois Supreme Court has held that police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant. This Illinois evidentiary rule is consistent with the law of many other States." 386 U.S. at 305.

In Kansas all the cases we find dealing with our statutory privilege likewise deal with informers who have supplied preliminary information. *State v. Robinson,* 203 Kan. 304, 454 P.2d 527 (1969); *State v. Grider,* 206 Kan. 537, 479 P.2d 818 (1971); *State v. Nirschl,* 208 Kan. 111, 490 P.2d 917 (1971); *State v. Braun,* 209 Kan. 181, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972); *State v. Deffenbaugh,* 216 Kan. 593, 533 P.2d 1328 (1975); *State v. Jacques,* 2 Kan. App. 2d 277, 579 P.2d 146, *aff'd as modified* 225 Kan. 38, 587 P.2d 861 (1978). Typical of the reasoning and result reached in those cases is the following from *Braun:*

"It is incumbent upon the defendant to show that the identity of the informer is material to his defense. (*People v. Martin,* 82 Cal. Rptr. 414, 2 C. A. 3rd 121.) It is clear from the record in this case that there was *no showing that the informer participated in the offense or that the informer was present at the time of the serving of the search warrant or that he was a material witness in the case.* As pointed out in *State v. Robinson,* [203 Kan. 304, 454 P.2d 527 (1969)], when the issue is probable cause for the search *and not guilt or innocence of the defendant,* the state generally need not disclose the identity of the informer. The reason for this rule is that the prosecution is usually based upon the narcotics taken at the time of the search and arrest and the informer has little or nothing to do with this aspect of the case. Since the appellant *failed to show that the informer participated in the offense or that the informer was in any way a material witness* we cannot say the district court abused its discretion in refusing to compel disclosure of his identity." 209 Kan. at 186. Emphasis added.

In this case, of course, we are not dealing with a mere tipster but with an intermediary who first suggested the crime, introduced the principals, and witnessed the entire transaction.

That is the kind of informer the Court was dealing with in *Roviaro.* There the unrevealed informant had himself made the drug buy underlying one count of sale, and had driven the defendant to his cache to secure the drugs on which were based a second count of transporting illegally imported drugs. The government made no attempt to defend the conviction on the first count. As to the second, however, it claimed that the testimony of two agents who observed the transaction was sufficient and the identity of the informer was not relevant. The Court there formulated its famous balancing test:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular

circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62.

Applying that test, it found that the informer's identity there was essential to a fair trial because it was "highly relevant and might have been helpful to the defense." 353 U.S. at 63-4. Except for the government agents, the informer was the only witness to the crime. He had "helped to set up the criminal occurrence and had played a prominent part in it." 353 U.S. at 64. His testimony might have disclosed entrapment, and it might have controverted, explained or amplified defendant's conversations as related by a government agent.

All those factors, relied on by the Court in finding error in *Roviaro,* are also present here. There are, moreover, two additional elements which lead us to conclude there is error here.

First, the trial court's initial ruling denying disclosure was based on its finding, made in the Journal Entry ruling on defendant's motion, that "[t]he defendant is well aware of the identity of the 'confidential informant.' " The Journal Entry reflected the court's observations in argument on the motion (which was being considered along with similar motions in other cases developed by Padilla's investigation):

"The defendant is, I believe, rather well informed as to the time and the circumstance of the occurrence which brought about his arrest. The Court was impressed by a couple [of] other hearings on the same matters involving Mr. Padilla, and I don't know whether the same informant operated in these three cases as operated in the other two cases; but as nearly as I could figure out, the only persons in this courtroom who did not know the identity of the confidential informant were the Court and the jury."

The defense at all times stoutly maintained ignorance of the informer's identity. Of course, if the defendant made the sale just as Padilla said, he would have *had* to know the informer's identity. The motion, however, was decided before trial when the presumption of innocence still cloaked the defendant (K.S.A. 21-3109); the court's ruling apparently assumed guilt. The court's reference to other cases sheds some light on its thinking, but there is certainly nothing in *this* record to show that at the time of the pretrial ruling defendant knew who the informer was.

On the other hand, if there had been evidence to support a finding that the informer's identity had "already been otherwise disclosed," then under 60-436(*a*) the privilege no longer existed.

As all the cases recognize, the purpose of the privilege is to protect the informer from the wrath of those who would resent the informer's role. If the informer's identity is known, the purpose of the privilege is destroyed. *Roviaro v. United States,* 353 U.S. at 60, n. 8. Either way, the trial court's belief that the defendant knew the informer's identity was an insufficient ground for further withholding it.

The second reason we find error is because of the particular way the existence of the informer was used at trial. There was, as previously explained, but one witness to the alleged sale and that was Padilla. He was, naturally, a stranger in the Cloud County community. It was essential to the State's case, in this and the other prosecutions arising out of his investigation, that his testimony be believed not only as to the facts surrounding the sale but the identity of the local seller. The prosecutor in his opening statement to the jury described the meeting in the Concordia bar and the departure to consummate the sale. He added "[t]hat also accompanying them was a confidential informant, the informant being someone from our area who was working with the agent to introduce him around the Concordia and Cloud County area." To the jury the obvious import of this statement was that there was a local person, who, if called, would corroborate Padilla's testimony.

In addition, Padilla testified to the informer's presence and, over defense objection, testified that he was exercising his privilege not to identify the informer and gave the following as his reason for doing so:

"The purpose of keeping individuals confidential is primarily for his own personal—his or her own personal protection from retribution or revenge from subjects who I meet from this person from revenge later on to get even for introducing me to' subjects involving drugs."

Although the overruling of the objection to this testimony is not pursued on appeal as an independent ground of error, it seems to us the error is apparent and, when combined with the rest of the manner in which the informer was dealt with, heightened the prejudice to the defendant. The clear implication of this answer was that defendant Knox, if he knew who the informer was, would take revenge upon him. There was no evidence that this was true (the trial court apparently thought Knox knew the informer all along), and even if there were, Padilla's motives for

claiming the privilege were not relevant to the guilt or innocence issue before the jury. While this ruling, as such, cannot be relied on for reversal, it does form part of the pattern of use made of the informer in presenting the State's case to the jury.

Throughout Padilla's testimony the presence of the informer during the entire transaction was referred to repeatedly. It seems to us this manner of placing the informer's role before the jury had the effect of using the informant's presence to bolster Padilla's otherwise uncorroborated testimony. It was tantamount to a hearsay use of the informer's testimony, and denied defendant his Sixth Amendment right of confrontation and cross-examination.

We find a striking parallel between this case and *United States v. Ariza-Ibarra*, 605 F.2d 1216 (1st Cir. 1979). There a confidential informer gave narcotics agents information leading to the warrantless arrest and attendant successful search of the defendants. Although the informer was named, his address and general whereabouts were withheld to honor the government's promise that he would not have to testify, despite the defense's insistence that it had a right to cross-examine him.

The informer's statements identifying defendants as drug dealers and his past record of reliability had been introduced at a pretrial suppression hearing to show probable cause for the arrest. The appellate court approved the procedure thus far. However, the prosecutor also pursued the question of the informer's reliability at trial before the jury, both in the opening statement and in the testimony of the narcotics agent. As the court observed, "Bolstering the government's case in this manner served to place the experienced informer alongside [the agent] as an additional witness, yet one immune from cross-examination by defendants." 605 F.2d at 1222. The result was found to be a denial of the right of confrontation requiring a reversal, without reaching the *Roviaro* question of whether the informer's presence would have been helpful to the defense.

If the question here were simply the *Roviaro* question, it might be possible to seek a resolution without necessarily granting a new trial. The federal courts frequently employ the device of a remand to permit the trial court to interrogate the informer in camera. After such a hearing the trial court can apply the *Roviaro* balancing test to determine whether disclosure is essential to a

fair trial. See *e.g., Alderman v. United States,* 394 U.S. 165, 182 n. 14, 22 L.Ed.2d 176, 89 S.Ct. 961 (1969); *United States v. Doe,* 525 F.2d 878, 880 (5th Cir. 1976); *United States v. Rawlinson,* 487 F.2d 5, 7 (9th Cir. 1973); *United States v. Hurse,* 453 F.2d 128, 130-1 (8th Cir. 1971); *United States v. Lloyd,* 400 F.2d 414, 416-17 (6th Cir. 1968); *United States v. Jackson,* 384 F.2d 825, 827 (3d Cir. 1967).

That remedy may be appropriate where the informer's activities and supposed testimony were never presented to the jury, and the question is whether, if presented, they might be useful to the defense. Here, however, in the light of the use made of the informer as outlined above we see no way in which such a hearing could repair the damage done. It would not do to say, after the fact, that the informer's testimony would have corroborated Padilla's, hence it did no harm for the jury to so assume and to convict on that basis. The right of confrontation is too important to be dispensed with so easily. See *e.g., Barber v. Page,* 390 U.S. 719, 20 L.Ed.2d 255, 88 S.Ct. 1318 (1968); *Pointer v. Texas,* 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065 (1965).

We also note that in a case much like this the Missouri Supreme Court just recently held that an informer's identity should have been disclosed in *State v. Wandix,* 590 S.W.2d 82 (Mo. 1979). The informer there introduced the officer to the narcotics seller, accompanied them to a house where the sale was to be made, and either remained just outside or went in with them while the officer made the buy. The Missouri court summarized the *Roviaro* test as follows:

"In summary, the rule requires disclosure where the informant was in a position to offer testimony relevant and crucial to the defense; *i.e.* disclosure would not be required if the testimony were on minor or collateral issues or if the testimony would be merely cumulative of that of other neutral parties. The degree of cruciality necessary to require disclosure must be balanced against the State's need for non-disclosure; *i.e.* possible non-disclosure where the informant is still active in other investigations and the accused's need is minimal." p. 85.

It went on to hold that where identity of the seller was a crucial issue, and the informer was not active in ongoing investigations, the balance must be struck in favor of disclosure. As the court put it:

"Although the State may have some interest in being able to tell an informant that his identity will never be revealed, even after he is inactive, this interest is not of

sufficient magnitude to justify non-disclosure where the informant could provide relevant testimony at trial." p. 86.

The same considerations, along with the others referred to above, lead us to conclude that disclosure should have been made here. The result is that the conviction of this defendant for the sale of marijuana must be reversed and the case remanded for a new trial on that count.

Affirmed as to Count II (possession); reversed as to Count I (sale) and remanded for a new trial.