No. 64,458

STATE OF KANSAS, *Appellant,* v. DAVID WAYNE CLOVIS, *Appellee.*

(807 P.2d 127)

Opinion filed March 1, 1991.

*Julie A. McKenna,* county attorney, argued the cause, and *Brenda K. Gillette,* assistant county attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellant.

*James L. Sweet,* of Sweet & Boyer, of Salina, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals the dismissal with prejudice of two counts of a multiple-count complaint as a sanction for the State's failure to comply with a discovery order to disclose the identity of a confidential informant. A detailed recital of the facts leading up to the dismissal by the district court is necessary to understand the issues raised by the State in this appeal.

On or about March 20, 1989, James Blair was working as an undercover informant for the Salina Police Department and made a controlled buy of two pounds of methamphetamine. After this buy, officers of the Salina Police Department applied for several search warrants for places believed to be related to the drug transaction. One search warrant was for defendant's residence just outside Salina in Saline County, Kansas. This search warrant was executed on March 25, 1989. Defendant, who was home at the time the officers arrived, was arrested and taken into custody.

On March 27, 1989, a second search warrant for defendant's residence was issued. The search warrant was based upon information received from a confidential informant (CI), who informed

a deputy sheriff after the first search warrant had been executed that additional illegal drugs, narcotics, and other items of contraband were still located at defendant's residence. The officers executed this warrant on March 27, 1989, while defendant was still in custody, and seized 33 additional items that were not taken into custody during the first search. Included among the items seized during the second search were 4 3/4 pounds of marijuana separated into six plastic bags, which were located in a larger plastic bag, and a sawed-off shotgun found in plain view on a workbench, although partially covered by other items. This evidence is the basis for Counts 10 and 11.

In his affidavit for the second search warrant, Deputy Sheriff Kvacik indicated that the Salina Police Department obtained the first search warrant before he could assemble the necessary information; he also stated that execution of the earlier warrant verified the information his CI had provided prior to execution of the first warrant because drugs, drug paraphernalia, and weapons were found during the search.

Kvacik stated in his affidavit that he was re-contacted by the CI on March 25, 1989, after the first warrant had been executed. The CI indicated that additional illegal drugs, narcotics, and other items of contraband were still located at defendant's house. The CI also informed the officer that drug paraphernalia, drugs, and money would be found in trash bags located throughout the house. The officer, who had assisted in the execution of the search warrant on March 25, 1989, confirmed that trash bags were located throughout the house. The affidavit also states that the CI was a previous tenant of the house.

At the preliminary hearing, Deputy Sheriff Kvacik testified that he believed the marijuana was not found during the first search because the officers found about 50 trash bags in the laundry room area of defendant's house and searched only about 15 of them. In contrast, Officer Dennis McClintock, the collection officer for the first search, testified at the preliminary hearing that he remembered seeing only five or six trash bags in that room. After the first search was completed, defendant's residence was not secured or watched by law enforcement officers. Kvacik admitted that the CI or someone else could have put the drugs in the house after the first search. Kvacik also admitted that the CI

once lived in the house and that Kvacik did not know if the CI had a key to the residence.

The first search, which was conducted on March 25, 1989, began at 12:50 a.m., ended at 8:30 a.m., and involved five officers. Kvacik testified that they attempted to thoroughly search the house, but the presence of trash, bugs, and rotten fruit, as well as a rattlesnake in the sink of the laundry room, made the search of the trash bags difficult. When the search was called off at 8:30 a.m., Kvacik did not advise the officer in charge that not all the bags had been searched.

On June 19, 1989, defendant filed a Motion to Produce, pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and K.S.A. 22-3212 and K.S.A. 22-3213. Among the items defendant listed to inspect and/or copy was a demand for any information furnished by an informant, as follows:

"4. Whether or not any relevant material or information has been furnished to law enforcement agencies by an informant or police agent. And if so, to state:

"a. The name and address of such informant.

"b. Any reports, written and/or recorded statements reflecting such information.

"c. Any record of misdemeanor or felony convictions of said informant.

"d. Any agreements made between such informant and the State."

In ¶ 7 of this motion, defendant also asks that the prosecution be under a continuing duty to notify defense counsel if additional material or information encompassed within the scope of the motion is discovered.

A hearing was conducted as scheduled on July 11, 1989, on defendant's and his three codefendants' pretrial motions. The State objected only to the production of the address of the CI used in the case, arguing that the address of the CI and other informants should not be disclosed for security reasons and asking that the State not be ordered to disclose "the whereabouts, the address, the employer or location of the informant." The State expressed concern about the safety of the State's witnesses.

As an alternative, the State suggested that a structured contact be allowed through the police department locally and that arrangements be made for interviews between the informants and

defense counsel. The State again objected to disclosure of the *whereabouts* of confidential witnesses that the State intended to use in the case but did not oppose identification by name. The court ruled that the witnesses could be contacted "only by the attorneys of record who represent the defendants and any contact by any of the parties with your intended witnesses would, in my judgment, be an indirect contempt of court and punishable accordingly."

The court clearly instructed the prosecutor to prepare the journal entries for the hearing, which the prosecutor acknowledged and agreed to do. The record contains no journal entry of this hearing.

On July 20, 1989, the State filed a Notice of Appeal pursuant to K.S.A. 22-3603, appealing from "the order of the District Court of Saline County, Kansas, entered on July 11, 1989, sustaining defendant's Motion to Produce and requiring plaintiff to disclose the address of the informant." No docketing statement was ever filed on this, and no further proceedings were conducted based upon that notice of appeal.

The record contains a copy of a letter dated August 16, 1989, from defense counsel to Brenda Gillette, Assistant Saline County Attorney, who was in charge of the case, which stated:

"On July 11, 1989, the Court sustained my motion to produce and ordered the County Attorney to provide information and records requested, and in particular the name and address of any informant or informants. To date I have not received this information or records."

On October 6, 1989, the State filed a motion asking the court to deny discovery of the current address of James Blair, who made the controlled buy for the Salina Police Department that was the basis for the first search warrant. Also on October 6, 1989, defendant filed a Motion for Sanctions and/or Additional Grounds for Continuance, asking that the State not be allowed to call or use the codefendant as a witness because of the State's delay in complying with the July 11, 1989, order to provide discovery.

A hearing on these two motions was conducted on October 10, 1989. The State acknowledged that the court had granted defendant's motion to produce in July of 1989 and confirmed that no journal entry of that hearing had ever been filed. The State

still refused to reveal the identity of the CI who had provided the information that was the basis of the second search warrant of defendant's house. Defendant argued that the name and address of the CI was important because, after the first search of the house on March 25, no one had explained how the CI knew the officers would find marijuana in a house that had already been searched while defendant remained in custody.

In response to defendant's motion, the assistant county attorney stated that her only explanation for the delay, from August 10 until October 6, in turning over the codefendant's statement was "inadvertness [sic] on the part of [her] office." The court inquired why defense counsel should be made to file a motion for sanctions, alleging that the prosecutor failed to comply with discovery orders, which the State did not respond to until substantially later. The court then stated:

"This is getting to be a pattern of conduct. I mean, this is a flagrant violation of the orders of the Court. Judge Woleslagel's notes indicate that somebody was supposed to prepare a Journal Entry because his notes on the docket sheet refer to 'motions heard and ruled upon pursuant to Journal Entry.' And I don't know who was supposed to—and I haven't talked to him."

Regarding the court's inquiry about the preparation of a journal entry, the prosecutor stated that she believed a journal entry had been prepared, but she did not have a copy of it. The court further questioned Ms. Gillette on the question of disclosing the confidential informant in this case:

"THE COURT: Well, what about the earlier report and about the confidential informant Mr. Sweet referred to with regard to Mr. Clovis' case?

"MS. GILLETTE: Your Honor, the confidential informant referred to in Mr. Clovis' case is a confidential informant who provided probable cause information to obtain a search warrant to search Mr. Clovis' house. There was no motion filed requesting disclosure of that confidential informant in the context of being provided information for the search warrant. And as the Court well knows, generally those types of confidential informants, the State is not required to disclose any information as to the identity of that type of a confidential informant unless the informant providing the information would be intended to be called as a witness at the trial. Those type of informants are not required to be disclosed.

"Now, it's true that the Motion to Produce does request information regarding any confidential informant, but it would be the State's position that since a separate motion was not filed relative to the information con-

tained in the search warrant, and since that information generally is not discoverable, that that would not apply in this particular case.

"THE COURT: It's not discoverable or it's not admissible?

"MS. GILLETTE: The identity is generally not discoverable in the case where a confidential informant furnishes information relating to probable cause relating to a search warrant."

The court then sought to clarify defendant's position regarding the CI. The court explained its understanding of the issue, as follows: A first search was conducted and the marijuana was not found, and then, while defendant remained incarcerated, a second search was conducted. The court concluded that the identity of the CI in such a situation would be highly relevant to determining how the marijuana got to its location. Although some of the information might not ultimately be admissible, it was certainly discoverable. The court ordered that the county attorney could either disclose the whereabouts of the particular CI or produce him for an interview with defense counsel. The court also found that any reports made by the CI would go not only to the validity of the statement given for the search warrants, but also to the theory of defense of the charges in the case and, therefore, was discoverable.

Concerning the request for imposition of sanctions or dismissal, the court indicated it would not rule on that question at the October 10, 1989, hearing, stating:

"The County Attorney may purge herself from any potential sanctions by complying with the orders of the Court within the next ten days. And for gosh sake if there is any problem in complying with the order, let's proceed properly and file the appropriate motions or call it to my attention or something else. I find it very difficult to concede good faith to people who sit on things and don't take action until they're threatened with sanctions. That's not good faith."

Defendant's trial was continued to November 8, 1989.

On October 19, 1989, at 9:56 a.m., the prosecutor filed a motion for reconsideration of the order entered by the court on October 10, 1989, to disclose the identity of the CI. In support of her motion, the county attorney again argued that the CI was used to establish probable cause to obtain the search warrant and did not participate in the drug transaction. The State did not intend to call the CI as a witness in the case and pointed out

that the officer had guaranteed the CI confidentiality in exchange for the information used to obtain the search warrant.

On October 19, 1989, at 4:15 p.m., the court entered an order denying the State's motion to reconsider its October 10, 1989, ruling. The court declined to reconsider the issue "since all matters of discovery and disclosure have been thoroughly argued and considered by Judge Woleslagel and by this Judge as well as by Judge Knudson." In further explanation of its order, the court stated: "Fundamental fairness in the preparation of the defense in this case dictates compliance in timely fashion with the discovery orders of this Court without repetitive 'reconsideration,' especially in view of the impending trial date." In its order, the court denied a hearing on the State's motion to reconsider.

On November 3, 1989, the county attorney filed a motion once again asking for a hearing on the issue of disclosure of the identity of the CI involved in the search warrant of defendant's house on March 27, 1989. In support of her motion, the county attorney reasserted that the information received by the CI was used to establish probable cause for the search warrant, but that the informant did not participate in or observe criminal activity involving the crimes charged, and that the defendant had not demonstrated materiality of the CI's identity to secure disclosure.

Also on November 3, 1989, defendant filed a motion to dismiss the case against him or to impose sanctions against the State or to continue the trial because the State had failed to comply with the discovery order initially entered on July 11, 1989, and reaffirmed on October 10, 1989.

The court conducted a hearing on these and other pretrial motions on November 6, 1989, two days prior to defendant's scheduled trial. The State argued that the identity was not material to the defendant's case. In response, the court noted defendant's position was: "[T]here was evidence discovered on the second search warrant that was not discovered on the first search warrant and [defendant] was incarcerated the entire time. That seems pretty relevant to me." The county attorney did not dispute the court's assessment of the situation but questioned why the identity of a person who had been promised anonymity and confidentiality would need to be disclosed unless it was essential to the defense of the case. The court affirmed its prior ruling that

defendant was entitled to determine who the individual was who led to the execution of the second search warrant and the finding of additional drugs that were not located during the first search.

The prosecutor then stated: "Some additional problems, your Honor is I don't know who this person is. I can speculate and guess." In response to this assertion by the State, the court noted it had problems with the whole proceeding because discovery had originally been ordered in July. When the prosecutor attempted to assert that she had continuously objected to the release of information regarding the CI, defense counsel pointed out that no objection had been made at the original discovery hearing to releasing the identity of the individual, but only to providing his address. The court noted that, at the October hearing when the court gave the State the option of producing the individual for an interview rather than providing his address, no one suggested that the CI was unknown.

In response to the court's inquiry, the State confirmed that Counts 10 and 11 are the only ones in the information that were relevant to the identity of the CI that the State refused to disclose. The court then stated:

"Well, I'm going to order that Count X and Count XI be dismissed with prejudice as a sanction for failure to comply with discovery orders of the Court because even if the discovery orders were complied with at this time it wouldn't give the Court or the counsel sufficient time to properly prepare to defend Counts X and XI. I have reviewed the Complaint & Information and I don't think that this would be relevant—the second search warrant would be relevant to any of the other counts against [defendant]."

Recognizing that the State would have a time problem with speedy trial if the case were continued, the court concluded both the State and the defendant would be best protected by striking Counts 10 and 11 from the complaint and information. Thus, no information provided by or derived directly from the CI regarding the second search warrant would be admissible at trial. An order journalizing the rulings of the court at the November 6, 1989, hearing was filed on November 6, 1989. On November 9, 1989, the State filed a notice of appeal challenging the dismissal with prejudice of Counts 10 and 11 of the complaint.

Before turning to the issues raised by the State, we must determine if the filing of an earlier notice of appeal by the State

bars jurisdiction of this interlocutory appeal. Following the hearing on July 11, 1989, when the court ordered that the State comply with the motion for production, including the providing of the names and addresses of the informants, the State filed a notice of appeal pursuant to K.S.A. 22-3603. Apparently, no other action was taken.

Defendant argues that, because no disposition was made on that appeal, it is still pending and this interlocutory appeal is barred. The basis of that notice of appeal was K.S.A. 22-3603, which provides:

> "When a judge of the district court, prior to the commencement of trial of a criminal action, makes an order quashing a warrant or a search warrant, suppressing evidence or suppressing a confession or admission an appeal may be taken by the prosecution from such order if notice of appeal is filed within ten (10) days after entry of the order. Further proceedings in the trial court shall be stayed pending determination of the appeal."

Furthermore, Supreme Court Rule 4.02(e) (1990 Kan. Ct. R. Annot. 20), which relates to interlocutory appeals by the prosecution, provides that, once an appeal is taken, further proceedings in the district court "shall be stayed pending determination of the appeal."

Defendant argues that the wording of the statute and Supreme Court Rule 4.02 is mandatory and requires that further proceedings in the district court be stayed. Therefore, the filing of the notice of an appeal by the State stayed all further proceedings in the court and deprives this court of jurisdiction to hear this appeal.

Proceedings before the district court were not stayed after the filing of the notice of appeal. Numerous motions were filed and hearings conducted after the filing of the notice of appeal on July 20, 1989. In *State v. Galloway*, 235 Kan. 70, 79, 680 P.2d 268 (1984), this court recognized that K.S.A. 22-3603 explicitly provides that further proceedings in a trial court shall be stayed pending determination of an interlocutory appeal. Therefore, if this were an appropriate appeal pursuant to K.S.A. 22-3603 and Supreme Court Rule 4.02, then further proceedings in the district court would not have been appropriate.

The State may take an interlocutory appeal pursuant to K.S.A. 22-3603 only when the trial court quashes a warrant or search

warrant or suppresses evidence or suppresses a confession or admission. Here, the district court did none of these. Instead, it ordered disclosure of the name and address of a confidential informant.

In *State v. Martin*, 233 Kan. 148, 660 P.2d 563 (1983), this court held that an order refusing to allow the prosecution to grant a witness immunity from perjury was not an appealable order under K.S.A. 22-3603. Appellate review of pretrial rulings against the prosecution is intended to apply to those issues that are determinative of the case. 233 Kan. at 150 (citing *State v. Burnett*, 222 Kan. 162, 166, 563 P.2d 451 [1977]) (interlocutory appeal allowed to State but not defendant in limited circumstances because following trial and an acquittal, double jeopardy would bar retrial).

Here, the notice of appeal filed July 20, 1989, was inappropriate. The State, perhaps realizing this, did not object to the court proceeding and took no further action to perfect the appeal. Because the appellate court had no jurisdiction, the proceedings in the district court were not negated by the filing of the earlier notice of appeal.

Defendant also argues that the State waived its right to challenge disclosure of the identity of the CI because it made no contemporaneous objection to revealing the CI's identity at the initial hearing on this issue. The State made no objection to this order until October 19, 1989, when it filed a motion for reconsideration of the court's order of October 10, 1989, which reaffirmed the order for the State to disclose the identity of the CI.

Although the State did not make the objection when the court initially ruled that the CI's identity needed to be disclosed, it did object prior to the trial. This late objection gave the court the opportunity to correct an error prior to the trial, and therefore the State is not estopped from raising the issue now. The State's long delay in contesting disclosure of the actual identity of the CI, however, is a consideration in determining whether the district court abused its discretion in ordering disclosure and in ordering dismissal of the two counts related to the CI.

We now turn to the two issues raised by the State in this appeal: Whether it was error to order disclosure of the CI and, if not, whether it was error to dismiss the two counts with prej-

udice for the State's failure to obey the order. As to the first issue, the State argues that the CI merely provided information to the Saline County Sheriff's Department that was used to provide probable cause for obtaining a search warrant of defendant's residence. The State contends that, because the CI did not participate in any drug transactions with the defendant that were the basis for any of the charges in this complaint, the court erred in ordering disclosure of his identity.

We note that no common-law privileges exist in Kansas; all relevant evidence is admissible unless a statutory ground exists to exclude it. *State v. Knox*, 4 Kan. App. 2d 87, 93, 603 P.2d 199 (1979). Kansas has codified what was known in the common law as "the informer's privilege" in K.S.A. 60-436, which provides as follows:

"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this state or of the United States to a representative of the state or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his or her identity is essential to assure a fair determination of the issues."

Here, the State asserts that, because the CI furnished information concerning a violation of the laws of Kansas, his identity is privileged because the defendant has not established that disclosure of the CI's identity is essential to assure a fair determination of the issues. We do not agree.

We have recognized that the privilege contained in K.S.A. 60-436 is closely modeled on the decision of the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957). *State v. Washington*, 244 Kan. 652, 656, 772 P.2d 768 (1989) (citing *State v. Knox*, 4 Kan. App. 2d at 93-94). In *Roviaro*, the Court discussed the purpose and scope of the privilege, as follows:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. [Citations omitted.] The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate

their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." 353 U.S. at 59-61.

In discussing *Roviaro*, the defendant here points out that the Court employed a balancing test:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62.

The State relies on several prior Kansas decisions involving an informant's privilege. In *State v. Robinson*, 203 Kan. 304, 308, 454 P.2d 527 (1969), this court, in approving the trial court's refusal to order disclosure of the identity of the informant, noted that the issue was probable cause to determine the reasonableness of the search of his vehicle, not a question of the guilt or innocence of the defendant. The court concluded that K.S.A. 60-436 places discretion in the trial judge to require disclosure of the identity of an informant in cases when he finds one of the statutory reasons for disclosure present. The court found the judge's refusal to require disclosure of the identity of the informant in *Robinson* was properly within the discretion of the trial court and was not abuse. 203 Kan. at 309.

Following *Robinson*, this court, in *State v. Braun*, 209 Kan. 181, 185, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972), rejected defendant's argument that the identity of the confidential

informant, whose information was used to obtain the search warrant, should be disclosed because defendant might then be able to develop a defense of entrapment. The court found it incumbent upon defendant to show that the identity of the informant was material to his defense and concluded that this record contained no showing that the informant participated in the offense, was present at the time of the serving of the search warrant, or was a material witness in the case. 209 Kan. at 186. The court noted that the reason for the rule is that the prosecution is usually based upon narcotics obtained during the search and arrest, and the informant has little or nothing to do with this aspect of the case. Because the defendant did not show that the informant participated in the offense or was in any way a material witness, the court refused to find that the district court abused its discretion in refusing to compel disclosure of the informant's identity. 209 Kan. at 186.

The confidential informant in *State v. Pink*, 236 Kan. 715, 717, 696 P.2d 358 (1985), received a reward for providing a Crimestoppers tip that led to identifying two armed robbers of a Church's Fried Chicken restaurant in Wichita. The trial court found that the information provided by the CI was used only to focus the investigation in a direction that led to the arrest of the defendants and was not used even as probable cause for an arrest warrant or search warrant. The CI was not endorsed as a witness and received a total reward of $1,000 for the information. The trial court denied the discovery request for the CI's identity but ordered that, if the informant became a witness at trial, then the fact that such a person was a Crimestoppers informant would be disclosed to the defendants, along with all statements made by that person. 236 Kan. at 721.

In affirming, this court relied upon the balancing test formulated in *Roviaro*, which requires weighing the public interests in protecting the flow of information with the individual's right to prepare his defense. Reaffirming *Braun*, we rejected defendants' argument that they could not establish the materiality of the CI's identity to their defense without knowing the information the CI could provide. Speculation and suspicion about the informant's testimony were not adequate grounds for requiring disclosure. 236 Kan. at 722. Although defendants' evidentiary burden was

harsh, it was eased by the court's in camera hearing with the CI. This court was satisfied that if the trial judge had found a reasonable probability that the informant could give needed testimony regarding guilt or innocence, disclosure of the informant's identity would have been required. Therefore, the decision denying disclosure of his identity was within the discretion of the trial court and would not be overturned without the showing of an abuse of discretion. .

The State here does not discuss *State v. Schilling*, 238 Kan. 593, 712 P.2d 1233 (1986), but it is cited by defendant. In *Schilling*, defendant sought the identity of a "confidential informant" known as "Susan." Defendant, who was charged with three counts of sale of marijuana on three different occasions, argued that "Susan" was present during the initial contact between defendant and the police officer who made the purchases in this case. Defendant admitted having a personal and sexual relationship with Susan but did not know her last name. The trial court concluded that the informant would have information that would be material and relevant and ordered disclosure of her full name. 238 Kan. at 594-95.

This court recognized that the decision of whether to disclose Susan's full identity was within the sound discretion of the trial court. 238 Kan. at 597-98. Count 1, which involved Susan's presence, had been dismissed. Defense counsel stipulated that Susan had no contact with the two remaining charges in that she did not set up the meetings and was not present. The detectives had no contact with Susan for three months prior to the second and third sales. Meanwhile, the defendant did not appear in person at the hearing on his motion to suppress, did not testify personally, and did not offer any evidence to support his motion. Although Susan was present at the initial meeting and introduced the detective to the defendant, this did not establish that her testimony would be material and essential to assure a fair determination of the issues at the trial on the two later sales, as charged in Counts 2 and 3. This court concluded that nothing in the evidence supported a finding that the informant's testimony would be helpful to the defendant in establishing a procuring-agent defense against the later two sales. Because no evidence supported the finding that disclosure of the informant's identity

was essential to a fair trial, the trial court erred in ordering disclosure. 238 Kan. at 600-01.

Disclosure was required in *State v. Knox*, 4 Kan. App. 2d 87, where the informant introduced the undercover law enforcement officer to the defendant and was a witness to the drug transaction that was the basis for the criminal charge. The informant was not a mere tipster but, instead, was an intermediary "who first suggested the crime, introduced the principals, and witnessed the entire transaction." 4 Kan. App. 2d at 95. Applying the balancing test of *Roviaro*, the Court of Appeals concluded that all the factors were present. Disclosure of the informant's identity was essential to a fair trial because the informant was the only witness to the crime except for government agents, and he may have played a prominent part in setting up the criminal occurrence. His testimony might have disclosed entrapment or have controverted, explained, or amplified defendant's conversations with the government agents.

In *State v. Washington*, 244 Kan. 652, the defendant was alone in a motel room rented in someone else's name. A bag containing heroin was found in the room but no direct evidence linked the defendant to it. In a trial to the court, the district court concluded that marijuana found in the motel room was not sufficiently linked to defendant to support a conviction for possession of marijuana. The informant had made a controlled buy in the room just prior to execution of the search warrant. Concluding the informant was not a "mere tipster," this court noted that his testimony was " 'highly relevant and might have been helpful to the defense.' " 244 Kan. at 659 (quoting *Roviaro*, 353 U.S. at 63-64). The informant could possibly provide critical evidence about the defendant's alleged possession of the heroin, obviously possessed knowledge that was relevant, and may have potentially assisted defendant in defending against the charges. The district court erred in refusing to require the identification of the informant without first conducting an in camera hearing to determine if the informant could assist the defense. 244 Kan. at 659.

Here, the State insists that the CI merely provided probable cause for the execution of a search warrant at defendant's residence on March 27, 1989. The State dismisses as mere speculation defense counsel's argument that the informant's identity should

be revealed to allow investigation of how the informant knew the marijuana was missed during the first search of defendant's residence.

The question, however, is not whether the district court could have refused to order disclosure, but whether the district court abused its discretion in failing to set aside a prior order of the court, which was entered by a different judge, directing that the identity of the CI be disclosed.

Although the information received from the CI provided information used to obtain the second search warrant, the circumstances here differ from other cases in which the CI is a "mere tipster." This CI did not merely provide information to obtain a search warrant. The CI knew one search had been conducted, and insisted that the officers return to obtain additional evidence that was located on the property. The defense suggests that, since the CI had previously resided at the house, he could have had a key and thus been able to return to the residence between the time of the two searches and while defendant remained in custody. His prior habitation at the residence also suggests the CI's personal knowledge of and perhaps participation in drug activities there.

The decision to order disclosure of a CI is within the discretion of the district court and should not be overturned on appeal unless an abuse of discretion is established. *Pink*, 236 Kan. at 722 (citing *State v. Nirschl*, 208 Kan. 111, 115, 490 P.2d 917 [1971]). Discretion is abused only where no reasonable person would take the view adopted by the court; if reasonable persons could differ about the propriety of the action taken by the court, then the court has not abused the exercise of its discretion. 236 Kan. at 722-23 (citing *State v. Wilkins*, 220 Kan. 735, 556 P.2d 424 [1976]).

Here, disclosure of the identity of the CI was first ordered by Judge Woleslagel on July 11, 1989, in granting defendant's motion to produce. The State did not object to disclosing the CI's identity and gave no indication that it would not comply with the court's order. Three months later, on October 10, 1989, a hearing was conducted to consider defendant's motion for sanctions. Judge Hebert affirmed Judge Woleslagel's order requiring disclosure of the CI's identity. On October 19, 1989, the State first objected

to disclosure of the *identity* of the CI. The court denied that motion. At a subsequent hearing, the State again argued that the identity of the CI should not be disclosed. The court stated it was clear that, under the facts of this case, where a second search based upon the CI's statement revealed additional drugs and a sawed-off shotgun that were not found during the execution of the first search warrant, the identity of the CI should be disclosed in order to allow the defense to investigate possible theories.

In *Washington*, this court recognized that the need to reveal an informant's identity will depend upon the circumstances presented in each case, and thus " 'each case must be decided on its own merits.' " 244 Kan. at 658 (quoting *State v. Braun*, 209 Kan. at 184). See *State v. Pink*, 236 Kan. at 722. The two-day delay between the execution of the first and second search warrants while defendant remained in custody raises numerous questions about the CI's involvement in this case. Here, two different trial judges determined that the identity of the CI was "relevant and helpful to the defense of [the] accused," *Roviaro*, 353 U.S. at 60-61, and that "the informant could provide information essential to a fair trial by providing information relevant and helpful to the defense." *Washington*, 244 Kan. at 657. The State has failed to establish that this finding was an abuse of discretion. We conclude that reasonable persons could agree with the decisions by Judge Hebert and Judge Woleslagel ordering disclosure under these facts, and therefore no abuse of discretion is shown.

We next consider if the district court erred in dismissing Counts 10 and 11 with prejudice because of the State's failure to disclose the identity of the CI. Clearly, the State was given repeated opportunities to comply with the discovery order originally entered by the court at the hearing on July 11, 1989. In fact, as late as October 10, 1989, the State was once again given 10 additional days to purge itself of the failure to comply with the discovery order. At the hearing on October 10, and the subsequent hearing on November 6, 1989, the court expressed its extreme frustration in attempting to force the State to comply with this and other discovery orders.

The district court has great flexibility in imposing sanctions for failure to comply with a discovery order. In fact, sanctions are

specifically recognized in the discovery statute, K.S.A. 22-3212(7), which states, in relevant part:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

We have recognized that the trial court may dismiss a case where failure to abide by the discovery rules prevents a fair trial. In *State v. Schilling*, 238 Kan. at 601, the trial court ordered the prosecutor to disclose the informant's identity, dismiss the case with prejudice, or be held in contempt of court. This court recognized that the trial court is vested with wide discretion in dealing with the failure of a party to comply with a discovery order, 238 Kan. at 601 (quoting *State v. Jones*, 209 Kan. 526, 528, 498 P.2d 65 [1972]), and pointed out that dismissal was the most drastic sanction that could be applied, to be used where failure to abide by the discovery rules prevented a fair trial. 238 Kan. at 601 (citing *State v. Winter*, 238 Kan. 530, 712 P.2d 1228 [1986]). Because of the power of the court to dismiss a case, the trial court had no need to invoke its contempt powers. This court found no authority for allowing the trial court to threaten a prosecutor with contempt for failure to dismiss a criminal case with prejudice when the trial court had its own authority to enforce its discovery orders by dismissing as a sanction. 238 Kan. at 601-02. Justice Prager, although disagreeing with the majority that the district court abused its discretion in ordering disclosure, stated:

"I agree that a trial court may dismiss a criminal case for failure of the prosecution to disclose the name of an informant. Because the trial court has that authority, there was no need for the trial court in this case to invoke its contempt power and to order the prosecution to either dismiss the case or be in contempt. The trial court should simply have given the prosecution a reasonable time to furnish the name of the confidential informant and, if the name was not furnished by that date, the trial court should then have dismissed the case. That would have been the appropriate action for the trial court to have taken." *Schilling*, 238 Kan. at 607.

That is exactly what the district court did here. In imposing sanctions, the court noted not only the prosecutor's failure to reveal the identity of this CI, but also other acts in this case and others showing the prosecutor's refusal to comply with orders of the court. The court specified that it was imposing sanctions because of the prosecutor's continuing disregard of the court's order to disclose the CI.

Furthermore, at the hearing on November 6, 1989, the State agreed that a time problem existed under the speedy trial issue. The court struck Counts 10 and 11 from the complaint against defendant, stating that "both the position of the State and the defendant could be best protected in this situation." The court specifically stated that the two counts were dismissed "because even if the discovery orders were complied with at this time it wouldn't give the Court or the counsel sufficient time to properly prepare to defend Counts X and XI."

A dismissal with prejudice is a very drastic sanction to impose in a criminal case. Such sanction should not be imposed if a lesser sanction would accomplish the desired objective. Here, the desired objective was the disclosure of the identity of the CI by the State. We are not aware of, nor does the State suggest, a less drastic sanction that would have accomplished that objective in this case. The test is whether the district court abused its discretion in dismissing the two counts with prejudice. We conclude that the action taken by the district court was appropriate in this case. The district court did not abuse its discretion in dismissing Counts 10 and 11 of the complaint, based upon its authority to impose sanctions pursuant to K.S.A. 22-3212(7).

The judgment of the district court is affirmed.