NOT DESIGNATED FOR PUBLICATION

No. 114,244

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH CHAVEZ, II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed July 28, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Brock R. Abbey*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*: Joseph Chavez, II, was driving at about 110 miles per hour at approximately 2 a.m. when his car left the road, rolled over, and ejected back-seat passenger Eddie Groff who died from his injuries. Chavez and the other passenger, Angela Nash, received minor injuries.

Chavez was taken to the hospital where the medical staff, as part of their routine testing of trauma patients, took a blood sample from Chavez at 3:15 a.m. The sample showed that Chavez had a blood alcohol concentration of 0.2284 grams per 100 milliliters, well above the legal limit of 0.08 grams per 100 milliliters.

1

The State charged Chavez with involuntary manslaughter while driving under the influence (DUI); driving with a suspended, cancelled, or revoked license; DUI; violation of vehicle registration laws; speeding too fast for conditions; and transportation of alcohol in an open container.

The State later informed the defense that one of the investigating police officers had resigned because he was being investigated about his untruthfulness in other cases. Chavez' attorney raised the issue of a possible violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), regarding the State's duty to disclose evidence favorable to the defense, including evidence with which to impeach a State's witness. The State informed the court that it had reported this information as soon as it learned of the ongoing investigation. The district court granted the defense's request for a continuance while the matter was investigated.

After further hearings on the *Giglio* and *Brady* issue, the court found that the State had willfully and intentionally withheld information about the investigating police officer. The court sanctioned the State by granting a continuance and assessing the time against the State for speedy trial purposes.

The State promptly (that same day) moved the court to clarify how much time was being assessed against the State and to reconsider its ruling. The State pointed out that if the court assessed the entire time against the State, the case would have to be dismissed for violating Chavez' speedy trial rights. The State asked the court to assess some of the time to Chavez.

The court convened a hearing that same day and assessed 6 days of the delay to Chavez because a continuance had initially been granted to Chavez to permit him to determine what to do. That left the State with a few days left on the 90-day speedy trial

2

clock. Because the case could not be tried within that short period, the State moved the court to release Chavez on his own recognizance, which the court granted. That extended the speedy trial deadline to 180 days under K.S.A. 2012 Supp. 22-3402(b).

The following month Chavez moved the court to dismiss the case and discharge him based on a violation of his right to a speedy trial. At the hearing that followed, the court reiterated that it had sanctioned the State for its willful and intentional failure to disclose the *Giglio* information, but there was no indication the State had acted in bad faith. Further, the court never intended for the sanction to result in a dismissal of the case. Thus, the court denied Chavez' motion to dismiss.

After a series of continuances requested by Chavez, the case proceeded to trial. The jury convicted Chavez of involuntary manslaughter while DUI, driving with a suspended or revoked license, DUI, and transporting an open container of alcohol. The other charges were submitted to the court for a bench trial. On these charges the district court found Chavez guilty of violating vehicle registration laws and traveling at an unsafe speed.

At sentencing, the district court merged Chavez' lesser crime of DUI into his conviction for involuntary manslaughter while DUI. The court sentenced Chavez to 162 months in prison for involuntary manslaughter while DUI, to be followed by 36 months' postrelease supervision. For transportation of an open container of alcohol, the district court sentenced Chavez to 6 months in jail and imposed a $100 fine. For the registration violation, the district court ordered Chavez serve a concurrent 30 days in jail. The court also ordered Chavez to pay $750 in attorney fees. Chavez' appeal brings the matter to us.

Chavez' first claim of error is that the district court should have dismissed the case for a violation of his speedy trial rights under K.S.A. 22-3402. He focuses on the district court's reconsideration of the sanctions it initially imposed based on the State's motion filed on the day of the court's initial ruling. But for that reconsideration of the court's ruling earlier in the day, the 90-day speedy trial deadline would have expired. He argues that the district court abused its discretion in granting the State's motion to reconsider and in amending its initial sanctions order.

Chavez relies on *State v. Wilson*, No. 114,203, 2016 WL 1169487 (Kan. App. 2016) (unpublished opinion). In *Wilson*, a panel of this court concluded that the district court did not abuse its discretion in denying the State's motion to reconsider the court's earlier order granting Wilson's motion to suppress evidence. As part of its motion to reconsider the State sought to submit evidence of the defendant's written consent to a search of his home, evidence that could have been presented at the original hearing on the suppression motion. The *Wilson* panel cited various federal court cases which reject motions to reconsider which involve nothing more than dressing up arguments that previously failed or present evidence that should have been presented at the initial hearing. The *Wilson* court concluded that the district court did not abuse its discretion in denying the State's motion to reconsider because the State could have presented the evidence at the initial hearing.

Holding that the district court did not abuse its discretion in denying a motion for reconsideration does not stand for the proposition that under the same circumstances it would be an abuse of discretion for the court to grant the motion. In fact, the *Wilson* court stated:

"The State cites several cases showing that a district court may allow additional evidence to be presented after a motion to suppress has been granted. [Citation omitted.] We have no doubt that a district court has discretion to do so. But those cases . . . show only that a district court may consider additional evidence after granting or denying a motion to suppress if it believes the facts of the case warrant reconsideration." 2016 WL 1169487, at *6.

A district court abuses its discretion when its decision is based on an error of law or fact or where no reasonable person could agree with the district court's decision. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). We find no abuse here.

Under K.S.A. 2012 Supp. 22-3212(g) [now K.S.A. 2016 Supp. 22-3212(i)], a district court has wide discretion to sanction a party for discovery violations. Here, the district court did not calculate the effect of its ruling when imposing its initial sanction. Even though the initially imposed sanction resulted in 92 days being assessed to the State as of the date of the hearing, Chavez still had to obtain relief under the speedy trial statute by asserting the claim and winning dismissal. See *State v. Spencer Gifts, LLC*, 304 Kan. 755, 768, 374 P.3d 680 (2016) (noting that the mere running of the statutory time period for speedy trial does not establish a vested right and party must still secure dismissal); *State v. Dupree*, 304 Kan. 43, 52, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016).

In support of its motion for reconsideration, the State did not proffer any new evidence. It simply pointed out that the effect of the ruling would be the ultimate sanction of dismissal. In *State v. Davis*, 266 Kan. 638, 972 P.2d 1099 (1999), the court dismissed with prejudice all charges against the defendant based on the prosecutor's failure to comply with a discovery order. Our Supreme Court observed that a dismissal is the most drastic sanction and "'should not be imposed if a lesser sanction would accomplish the desired objective.'" *Davis*, 266 Kan. at 646 (quoting *State v. Clovis*, 248 Kan. 313, 331, 807 P.2d 127 [1991]). In our present case, the court acknowledged that a dismissal was not the court's intended consequence and modified its ruling accordingly. The initial

ruling on sanctions was an interlocutory order which the district court had ongoing authority to change during its ongoing jurisdiction over the case.

The district court had jurisdiction to review and modify its sanction order. Because a reasonable person could agree with the district court's decision, the district court did not abuse its discretion in considering the State's motion and modifying the imposed sanctions to avoid a dismissal for a speedy trial violation. The district court did not err in failing to dismiss the case based on a claimed violation of Chavez' statutory speedy trial right.

## FAILURE TO INSTRUCT ON LESSER INCLUDED CRIMES

Chavez claims the district court should have instructed the jury on involuntary manslaughter and vehicular homicide as lesser included crimes of involuntary manslaughter while DUI. He contends that the failure to do so was error and violated his constitutional right to a jury trial, so he should be granted a new trial.

The four-step process for appellate review of jury instructions is well known to the parties and can be found in *State v. Solis*, 305 Kan. 55, 66, 378 P.3d 532 (2016).

Here, Chavez preserved the issue for review by requesting jury instructions on involuntary manslaughter and vehicular homicide as lesser included crimes of involuntary manslaughter while DUI.

The district court is required to instruct on any lesser included crimes to the charged crimes in cases in which "there is some evidence which would reasonably justify a conviction of some lesser included crime." K.S.A. 2016 Supp. 22-3414(3); *State v. Fisher*, 304 Kan. 242, 257-58, 373 P.3d 781 (2016). K.S.A. 2016 Supp. 21-5109(b) defines a lesser included crime as:

6

"(1) a lesser degree of the same crime . . .;

"(2) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;

"(3) an attempt to commit the crime charged; or

"(4) an attempt to commit a crime defined under paragraph (1) or (2)."

Because the definition of a lesser included crime is expressed in the alternative, we will consider each definition with respect to both involuntary manslaughter and vehicular homicide, the crimes Chavez contends are lesser included crimes in the more serious involuntary manslaughter while DUI.

■  *Involuntary Manslaughter*

Chavez claims the district court should have instructed the jury on involuntary manslaughter and vehicular homicide as lesser included crimes of involuntary manslaughter while DUI. We will first take up the claim that involuntary manslaughter in one of its lesser forms is a lesser included crime in manslaughter while DUI.

Involuntary manslaughter is defined in K.S.A. 2016 Supp. 21-5405 as the killing of a human being committed in one of several ways:

"(1) Recklessly;

"(2) in the commission of, or attempt to commit, or flight from any felony, other than an inherent dangerous felony as defined in K.S.A. 2016 Supp. 21-5402, and amendments thereto, that is enacted for the protection of human life or safety or a misdemeanor that is enacted for the protection of human life or safety . . . excluding the acts described in K.S.A. 8-1567 [criminalizing DUI], and amendments thereto;

"(3) in the commission of, attempt to commit, or flight from an act described in K.S.A. 8-1567 [criminalizing DUI], and amendments thereto; or

"(4) during the commission of a lawful act in an unlawful manner."

7

*Not a Lesser Degree of the Same Crime*

Involuntary manslaughter while DUI is a more severe level 4 crime than the other types of involuntary manslaughter which are less severe level 5 crimes. K.S.A. 2016 Supp. 21-5405(b). Chavez argues that because involuntary manslaughter while DUI is codified in the same statute as the other forms of involuntary manslaughter and is a more severe crime, the other forms of involuntary manslaughter are necessarily lesser included crimes.

Applying the tests for a lesser included crime found in K.S.A. 2016 Supp. 21-5109(b) leads us to conclude that the legislature did not intend for the less serious forms of involuntary manslaughter to be lesser included crimes of the more serious involuntary manslaughter while DUI.

*K.S.A. 2016 Supp. 21-5405(a)(1)*

Involuntary manslaughter under K.S.A. 2016 Supp. 21-5405(a)(1) is the killing of a human being committed recklessly. Involuntary manslaughter while DUI under K.S.A. 2016 Supp. 21-5405(a)(3), the more severe level 4 crime, is a strict liability offense, meaning the State is not required to prove the defendant acted with any required mental culpability for a conviction of manslaughter while DUI. See K.S.A. 2016 Supp. 21-5203(c); *State v. Kelly*, No. 114,563, 2017 WL 1295354, at *12-13 (Kan. App. 2017) (unpublished opinion) (concluding involuntary manslaughter while DUI is strict-liability offense), *petition for rev. filed* April 25, 2017.

A crime that has a mental culpability requirement cannot be a lesser included crime of a crime that has no mental culpability requirement. See *State v. Jefferson*, 297 Kan. 1151, 1171, 310 P.3d 331 (2013); *State v. Daniels*, 223 Kan. 266, 270, 573 P.3d 607

8

(1977). Thus, the reckless killing of a human being under K.S.A. 2016 Supp. 21-5405(a)(1), which has the mental culpability requirement associated with recklessness, cannot be a lesser included crime within involuntary manslaughter by DUI, which has no mental culpability requirement.

*K.S.A. 2016 Supp. 21-5405(a)(2)*

K.S.A. 2016 Supp. 21-5405(a)(2) criminalizes the killing of a human being while committing a felony other than an inherently dangerous felony or committing a misdemeanor intended to protect human life or safety. But it specifically excludes felonies and misdemeanors for driving under the influence, so involuntary manslaughter by DUI cannot be a lesser included crime under this provision in the voluntary manslaughter statute.

*K.S.A. 2016 Supp. 21-5405(a)(3)*

This is the more serious crime of manslaughter while DUI for which Chavez was convicted.

*K.S.A. 2016 Supp. 21-5405(a)(4)*

Under K.S.A. 2016 Supp. 21-5405(a)(4), killing a person during the commission of a lawful act in an unlawful manner cannot be a lesser included offense of involuntary manslaughter while DUI. But under the facts of this case, there is no lawful act here. Chavez was intoxicated and driving 110 miles per hour when his car left the road and rolled his car, causing Groff's death.

Accordingly, we conclude that the uncharged provisions of K.S.A. 2016 Supp. 21-5405(a) are not lesser degrees of the same crimes of involuntary manslaughter while DUI.

9

*All the Elements of the Lesser Crime Are Not Identical to Some of the Elements of the Crime Charged*

Next, we take up the second definition in K.S.A. 2016 Supp. 21-5109(b) of a lesser included crime.

Chavez was convicted under subsection (3) of K.S.A. 2016 Supp. 21-5405(a)—killing a human being while DUI. Involuntary manslaughter while DUI is not a specific intent crime. The State need only prove that the defendant killed a human being while in the commission of, while attempting to commit, or while fleeing from the crime of driving under the influence. K.S.A. 2016 Supp. 21-5405(a)(3).

The other scenarios found in subsections (1), (2), and (4) of K.S.A. 2016 Supp. 21-5405(a) are not strict liability crimes. For any one of these other forms of manslaughter to be a lesser included crime within the crime of manslaughter by DUI, all elements of the lesser crime must be identical to some of the elements of the more serious crime of manslaughter by DUI. But the lesser included forms of manslaughter found in subsections (1), (2), and (4) of K.S.A. 2016 Supp. 21-5405(a) contain an element of mens rea which is not found in the more serious crime of manslaughter by DUI. Thus, all the elements of the lesser forms of manslaughter found in subsections (1), (2), and (4) of the statute are not identical to some of the elements of the more serious crime of manslaughter by DUI.

*Not an Attempt Crime*

We now turn to the third and fourth definitions of a lesser included crime as found in K.S.A. 2016 Supp. 21-5109(b).

Under K.S.A. 2016 Supp. 21-5109(b), a lesser included crime includes (3) an attempt to commit the charged crime or (4) an attempt to commit a crime defined under paragraphs (1) or (2). Here, the purported lesser included crimes were not attempts to commit manslaughter by DUI. Accordingly, this element for a lesser included crime has not been satisfied.

Based on this analysis, we conclude that under the facts of this case the other forms of K.S.A. 2016 Supp. 21-5405(a) found in subsections (1), (2), and (4) are not lesser degrees of the crime of manslaughter while DUI. The district court did not err in denying Chavez' request for an instruction on involuntary manslaughter.

■ *Vehicular Homicide*

Chavez also argues that the district court should have granted his request for a jury instruction on vehicular homicide as a lesser included crime. Vehicular homicide is defined in K.S.A. 2016 Supp. 21-5406 as "the killing of a human being committed by the operation of an automobile . . . in a manner which creates an unreasonable risk of injury to the person or property of another" and which materially deviates "from the standard of care which a reasonable person would observe under the same circumstances."

Here, the real issue is not whether a jury instruction on vehicular homicide is a legally appropriate lesser included instruction, but whether such an instruction is factually appropriate.

11

Chavez relies on *State v. Makin*, 223 Kan. 743, 748, 576 P.2d 666 (1978), for support. We fail to find in *Makin* factual support for Chavez' position. In *Makin*, the defendant was convicted of involuntary manslaughter under K.S.A. 21-3404 for having unintentionally killed a person while operating a vehicle under the influence of alcohol. On appeal, Makin argued that he should have been charged under the vehicular homicide statute. The Kansas Supreme Court held that the vehicular homicide statute was concurrent with the general involuntary manslaughter statute "except where the acts of the accused constitute wanton conduct (gross negligence)." 223 Kan. at 748. Wanton conduct has long been defined as conduct engaged in with a realization of imminent danger to another and with reckless disregard or complete indifference to the probable consequence of such conduct. See 223 Kan. at 745. The *Makin* court concluded that "[i]n virtually all cases, then, vehicular homicide would be a lesser included offense of involuntary manslaughter," except in those cases where the defendant's conduct was grossly negligent. 223 Kan. at 748.

In *State v. Stone*, 253 Kan. 105, 114-15, 853 P.2d 662 (1993), our Supreme Court found that the trial court did not err in failing to instruct on vehicular homicide as a lesser included crime of involuntary manslaughter when the defendant's actions were grossly negligent.

In our present case, over an hour after the accident Chavez' blood alcohol concentration was 0.2284 grams per 100 milliliters, almost three times the legal limit. He was driving at approximately 110 miles per hour when he lost control of his car. There is no way to characterize Chavez' conduct as anything other than gross and wanton negligence. Under the facts of this case, vehicular homicide was not a lesser included crime for involuntary manslaughter while DUI, and the district court did not err in refusing to instruct the jury on vehicular homicide.

12

## THE FINE ASSESSED FOR TRANSPORTING AN OPEN CONTAINER OF ALCOHOL

For transporting an open container of alcohol, the court sentenced Chavez to 6 months in jail and ordered him to pay a $100 fine. Chavez contends that in doing so the district court failed to make the required findings under K.S.A. 2016 Supp. 21-6612(b)-(d). This issue is one of law over which we have unlimited review. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009).

The State concedes the point. When the underlying statute for a crime requires the imposition of both a fine and imprisonment, no special findings are needed. But when the court has the option to impose both a fine and imprisonment, the general provision of K.S.A. 2016 Supp. 21-6612 requires the sentencing court to make "specific findings on the record that the defendant financially benefitted from his or her crime or that a fine (in addition to the incarceration) is necessary to deter others from committing the crime or would deter the defendant from reoffending." *State v. Dawes*, No. 111,310, 2015 WL 5036690, at *7 (Kan. App. 2015) (unpublished opinion); see K.S.A. 2016 Supp. 21-6612(b), (d). Further, when setting the amount of the fine and the method of payment, the sentencing court must consider on the record the defendant's financial resources and the nature of the burden the payment of a fine will impose. K.S.A. 2016 Supp. 21-6612(c); *State v. Copes*, 290 Kan. 209, 222-23, 224 P.3d 571 (2010).

Because the court failed to make the requisite findings, we must vacate the imposed fine and remand the case to the district court for reconsideration of its imposition of a fine consistent with the provisions of K.S.A. 2016 Supp. 21-6612.

## ATTORNEY FEES

On a similar issue, Chavez contends that the district court failed to properly consider his financial resources and the nature of the burden that payment would impose

13

when the court ordered him to pay $750 for attorney fees. This is also an issue of law over which our review is unlimited. *State v. Hernandez*, 292 Kan. 598, 609, 257 P.3d 767 (2011).

Before ordering a defendant in a case such as this to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees under K.S.A. 22-4513(a) and (b), the district court must consider on the record "the financial resources of the defendant and the nature of the burden that payment of such sum will impose" in order to determine whether such an order will cause manifest hardship to the defendant or to the defendant's immediate family. *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006). Here, the district court briefly inquired about Chavez' financial resources before ordering him to pay a portion of his attorney fees:

> "THE COURT: Mr. Chavez, you said you have one child; is that correct?
> "THE DEFENDANT: (Nods affirmatively.)
> "THE COURT: A girl? Do you have any assets or income for which to help pay for attorney fees in this case?
> "THE DEFENDANT: No, Your Honor.
> "THE COURT: And when you're released what type of work will you be doing? Let me put that another way. Do you have any mental or physical disabilities that would prevent you from working full time?
> "THE DEFENDANT: No, I don't.
> "THE COURT: Based on his comments regarding not having any assets or income at this time to pay for counsel, but that he is able to work upon release, I'll impose the $100.00 BIDS fee, the application fee, find that's not an undue burden or hardship. I'm going to reduce the BIDS attorney fee request from $1,085.00 to $750.00."

Our Supreme Court decided in *State v. Wade*, 295 Kan. 916, 927, 287 P.3d 237 (2012), that evidence that the defendant is employable is not in itself an adequate inquiry into the defendant's financial resources or the burden payment would place on him.

14

Here, the district court did not inquire into what type of work Chavez anticipated doing once he served his sentence or what he could expect to earn. Nor did the court inquire into Chavez' debts and financial obligations, including his support obligation for his child. See *State v. Feenstra*, No. 114,864, 2016 WL 7178514, at *3 (Kan. App. 2016) (unpublished opinion) (remanding when district court merely ascertained that the defendant was employable on release and had two children under age 18 without inquiring into income, assets, or other financial obligations). Further, simply reducing the amount of fees Chavez was obligated to repay was not an adequate substitute for the financial inquiry required by K.S.A. 22-4513 and described in *Robinson*. See *State v. Carter*, No. 116,260, 2017 WL 2306331, at *1 (Kan. App. 2017) (unpublished opinion).

Accordingly, we must vacate the order to reimburse BIDS for a portion of Chavez' attorney fees and remand to the district court to conduct a hearing on attorney fees consistent with *Robinson*. See *State v. Smyser*, 297 Kan. 199, 207, 299 P.3d 309 (2013).

Affirmed in part, vacated in part, and remanded with directions.